**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

LIAM VARN,                                                    :

              Plaintiff,                      :          Civ. No. 1:19-cv-02875-MKB-RML

              v.                                  :

ORCHESTRADE, INC., and HAKIM ERHILI,     :

              Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

BERG & ANDROPHY
Jenny H. Kim (jkim@bafirm.com)
Chris L. Sprengle (csprengle@bafirm.com)
120 West 45th Street, 38th Floor
New York, New York 10036
Tel:  (646) 766-0073
Fax:  (646) 219-1977

*Attorneys for Defendants Orchestrade, Inc.*
*and Hakim Erhili*

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ................................................................................. 3

    I.    Hakim Erhili ........................................................................................... 3

    II.   The Services Agreement ......................................................................... 3

    III.  Plaintiff's Allegations Of Non-Payment ................................................ 4

    IV.  Plaintiff's Demand Letter And Defendants' Response ........................... 5

ARGUMENT ...................................................................................................... 7

    I.    Service On Mr. Erhili Was Defective, There Is No
Personal Jurisdiction Over Mr. Erhili, And Plaintiff Alleges
No Possible Claim Against Mr. Erhili .................................................... 7

    II.   Neither NYLL § 191 Nor FIFA Applies To Independent
Sale Representatives Like Plaintiff ........................................................ 8

           A.    Plaintiff Is Not Entitled To Relief Under Section 191
Of The NYLL ............................................................................ 9

           B.    Plaintiff Is Not Entitled To Relief Under FIFA ....................... 11

           C.    Sections 191-a Through 191-c Also Provide No Relief To Plaintiff ........ 12

    III.  Quasi-Contract Claims Fail Where, As Here, There Is A Contract .................... 14

    V.   Plaintiff Has Not Alleged A Cause Of Action For Account Stated ..................... 14

CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Abbot, Duncan & Wiener v. Ragusa*,
    214 A.D.2d 412 (1st Dep't 1995)........................................................................14-15

*ACE Sec. Corp. Home Equity Loan Tr. v. DB Structured Prods.*,
    5 F. Supp. 3d 543 (S.D.N.Y. 2014) ...................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................8-9

*Assoc. Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*,
    159 F. Supp. 3d 324 (E.D.N.Y. 2016)................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................8, 9

*Brady v. Basic Research, L.L.C.*,
    101 F. Supp. 3d 217 (E.D.N.Y. 2015)................................................................... 8

*Browning v. Ceva Freight, LLC*,
    885 F. Supp. 2d 590 (E.D.N.Y. 2012)................................................................... 11

*Cabrera v. Anjuna LLC*,
    2018 WL 3528214 (Sup. Ct. N.Y. Cnty. July 20, 2018)........................................... 10

*Cont'l Building Prods. Operating Co., LLC v. LaFarge North Am., Inc.*,
    2018 WL 1583309 (S.D.N.Y. Mar. 27, 2018) ........................................................ 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)................................................................................ 4

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010) .................................................................... 13

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011) ............................................................................... 14

*Environmental Servs. v. Recycle Green Servs.*,
    7 F. Supp. 2d 260 (E.D.N.Y. 2014)...................................................................... 15

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) .................................................................. 16

*Jacques v. DiMarzio, Inc.*,
    200 F. Supp. 2d 151 (E.D.N.Y. 2002)................................................................... 16

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..................................................................... 8

*McGovern Consulting, LLC v. Newstex, LLC*,
    2014 WL 939294 (Sup. Ct. N.Y. Cnty. Mar. 7, 2014) ........................................ 13

*Nat'l Union Fire Ins. Co. of PA v. Cohen*,
    1994 WL 719704 (S.D.N.Y. Dec. 28, 1994) ....................................................... 16

*Pachter v. Bernard Hodes Group, Inc.*,
    10 N.Y.3d 609 (2008) ........................................................................................... 9

*Poindexter v. EMI Record Grp. Inc.*,
    2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) .................................................... 11

*Szafran v. Sandata Tech., Inc.*,
    452 Fed. Appx. 41 (2d Cir. Dec. 20, 2011) ....................................................... 13

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 5688 (S.D.N.Y. 2013) ................................................................ 9

*Trujillo v. Transperfect Global, Inc.*,
    2017 WL 748831 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017) ...................................... 10

STATUTES

New York Labor Law § 190 ....................................................................... 9, 10, 12

New York Labor Law § 191 ................................................................................ *passim*

New York Labor Law § 191-a ............................................................................. *passim*

NYC Administrative Code § 20-927 ........................................................... 1, 11, 12

RULES

Federal Rule of Civil Procedure 12(b)(2) ............................................................ 1, 3

Federal Rule of Civil Procedure 12(b)(5) ............................................................ 1, 3

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 3, 8, 15

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014).........................................................................15

Defendants Hakim Erhili ("Mr. Erhili") and Orchestrade, Inc. ("Orchestrade," and with Mr. Erhili, "Defendants") submit this memorandum of law in support of their motion to dismiss the complaint ("Complaint" or "Cmplt.") of Plaintiff Liam Varn ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Mr. Erhili, 12(b)(5) for insufficient service of process on Mr. Erhili, and 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

Orchestrade is a company that sells its financial software to end users (for example, hedge funds and banks), and Plaintiff was an independent sales representative for Orchestrade until that relationship ended on January 31, 2019.  In his Complaint, Plaintiff alleges that Defendants failed to pay him wages and commissions in violation of New York's Labor Law ("NYLL") § 191 and/or the Freelance Isn't Free Act ("FIFA") (NYC Admin. Code § 20-927 *et seq.*).  Plaintiff also states claims for quantum meruit, unjust enrichment and account stated. Tellingly, Plaintiff's complaint fails to allege *any* claim under the actual terms of the written contract that he had with Orchestrade, even though the Complaint affirmatively alleges that such a contract (what it refers to as the "Services Agreement") exists and governs the relationship between the parties.  (*See, e.g.*, Cmplt. ¶¶ 9-12, 19, 29)

In any event, even assuming Plaintiff's allegations to be true, there is no legal basis for any of the claims that Plaintiff sets forth in the Complaint.  First, all claims against Mr. Erhili – the CEO of Orchestrade – must be dismissed with prejudice.  Mr. Erhili is a California resident

---

[1]  Submitted herewith is the Declaration of Chris L. Sprengle, sworn to on June 19, 2019 ("Sprengle Decl.").

who works in California.  Thus, in order to utilize New York's long arm statute, Plaintiff must make specific allegations regarding Mr. Erhili's purported contacts and business within New York State.  Yet, the *only* specific allegation about Mr. Erhili in the Complaint is that he is the CEO of Orchestrade; this is woefully inadequate.  Further, Plaintiff improperly served Mr. Erhili by dropping off a copy of the Complaint at Orchestrade's satellite New York office.  Such "service" is ineffective on Mr. Erhili, a California resident who works at Orchestrade's headquarters in San Mateo, California.  (Dkt. No. 1 at ¶ 11)  Lastly, Plaintiff alleges no claim against Mr. Erhili; his dispute is with Orchestrade.

Second, Plaintiff does not qualify as a "commission salesman" or as any other type of employee under Section 191 of the NYLL.  And sales representatives like Plaintiff are expressly excluded from the wage provisions of FIFA.

Third, although Plaintiff fails to plead a violation of it in his Complaint, to the extent that Plaintiff seeks leave to replead a claim under NYLL §§ 191-a through -c, such a request should be denied.  Those sections of the NYLL addresses commission payments to sales representatives; however, it is inapplicable here since Orchestrade is not a "principal" as required by, and defined in, Section 191-a.

Fourth, it is established New York law that where, as here, a written contract exists, quasi contract remedies like quantum meruit and unjust enrichment are simply not available.

Fifth, Plaintiff has failed to allege anything sufficient to support its account stated cause of action.  An account stated caused of action only exists if there has been no dispute over the account.  Troublingly, Plaintiff knew that Defendants disputed his last invoice before Plaintiff filed his Complaint – and yet, Plaintiff still included allegations stating that Defendants had raised no dispute.

2

Plaintiff, through his company, had an agreement with Orchestrade, one with which he is clearly not happy.  However, that unhappiness gives him no right to assert inapplicable statutory and quasi-contract claims.  As demonstrated in more detail below, Plaintiff's alleged claims are meritless, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6).

## FACTUAL BACKGROUND

### I.    **Hakim Erhili**

Defendant Hakim Erhili was not properly served as Plaintiff's service of the Complaint on both Defendants was "effectuated" by leaving a copy of the Complaint at Orchestrade's satellite New York office.  Mr. Erhili is a resident of California and works at Orchestrade's headquarters in San Mateo, California.  (Dkt. No. 1 at ¶ 11)  Mr. Erhili did not sign the Services Agreement.  (Sprengle Decl. Ex. A at 3)

The Complaint's only specific allegation regarding Mr. Erhili is that Mr. Erhili is the CEO of Orchestrade.  Then, the Complaint generally alleges that:

> [B]oth Mr. Erhili and Orchestrade are subject to this Court's:  (a) general jurisdiction pursuant to CPLR 301 because they are doing business in this state; and (b) specific jurisdiction pursuant to CPLR 302 because they transacted business within this State and/or contracted to supply goods or services in this State.  Both Defendants have sufficient minimum contacts with the State of New York so as to render the exercise of jurisdiction by the courts of this State permissible under traditional notions of fair play and substantial justice.

(Cmplt. ¶ 6)  Such allegations are far from sufficient to establish personal jurisdiction over Mr. Erhili.  (*See infra* at 6)

### II.    **The Services Agreement**

Orchestrade and Gray Matter Inc. ("Gray Matter"),[2] Plaintiff's company, entered into the

---

[2]  Plaintiff alleges, and Defendant does not contest, that Plaintiff was engaged to provide services through his company, Gray Matter, which is the actual party to the Services Agreement.  (*See* Cmplt. ¶ 8; Sprengle Decl. Ex. A at 1)

Services Agreement in March 2018 (the "Agreement").[3]  In the Agreement, Orchestrade engaged

Plaintiff to lead its U.S. sales team, and contracted to pay Gray Matter, among other things, a

retainer and commissions.  (Sprengle Decl. Ex. A, §§ 3.1, 3.2)

As Plaintiff alleges, the Agreement's commission provisions state that Orchestrade would

pay Gray Matter three (3) percent of the revenue that Orchestrade received from Plaintiff's first

$1 million in total US sales, and five (5) percent of the revenue for Plaintiff's first $2 million

after that.  (Cmplt. ¶ 19; Sprengle Decl. Ex. A, § 3.2)  As the Agreement made clear, Plaintiff

was entitled to commissions only where sales were actually made and customers actually made

payments pursuant to those sales.  (*Id.*)

Under Section 3.3 of the Agreement, Gray Matter could also receive a "bonus" for 2018

if Plaintiff could provide a "Weighted US Pipeline" – as calculated under the terms of the

Agreement – that exceeded $2 million.  (Sprengle Decl. Ex. A, § 3.4)

### III.   Plaintiff's Allegations Of Non-Payment

Plaintiff alleges that Defendants owe him $71,000, only $21,000 of which is based on

sales commissions.

First, Plaintiff alleges that his "activities led to $1.3 million in revenue closed in 2018

from two major accounts, and $200,000 in revenue closed in early 2019 from one other major

account."  (Cmplt. ¶ 25)  Plaintiff then alleges that he is entitled to $51,000 in commissions on

this amount, of which $21,000 remains outstanding (*i.e.*, he acknowledges that Orchestrade has

paid him $30,000).  (*Id.* ¶¶ 14, 27-28)  However, as noted above, Gray Matter was only entitled

---

[3]  Although Plaintiff failed to attach the Agreement to its Complaint, as it is integral to Plaintiff's
claims, it is incorporated by reference.  *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949
F.2d 42, 47 (2d Cir. 1991).  Accordingly, Defendants attach it here.  (Sprengle Decl. Ex. A)

to commissions "upon Orchestrade receiving payment from the client." (Sprengle Decl. Ex. A, §

3.2) Plaintiff does not allege that Orchestrade actually received the entire $1.3 million in

question because he cannot make that allegation in good faith (particularly given the facts

below).

Second, Plaintiff alleges that he is entitled to a bonus of $50,000 under Section 3.4 of the

Agreement. (Cmplt. ¶¶ 29-35). Section 3.4 provides that Orchestrade would pay Gray Matter a

guaranteed sum of $50,000 for the year 2018 if Plaintiff provided a "Weighted US Pipeline of at

least 2 million USD." "Weighted US Pipeline" is then defined as "the total potential revenue of

the deal" multiplied "by the percentage likelihood of deal completion." The Agreement gives an

example: "E.g., a 1 million USO opportunity with a 20% chance to close will count as $200,000

(USO) towards the Weighted US Pipeline." (*Id.* ¶ 29) Plaintiff alleges that Defendants accepted

his calculation of his "Weighted US Pipeline" for 2018 (*Id.* ¶ 23). As outlined below, that

allegation is demonstrably false, and Plaintiff knew that this allegation was false when he filed

his Complaint. (*See infra* at 13)

## IV.    Plaintiff's Demand Letter And Defendants' Response

On February 20, 2019, Plaintiff's counsel sent Defendants a letter, which demanded that

Defendants pay Plaintiff the $71,000 purportedly owed by Defendants to Plaintiff. ("Demand

Letter," Sprengle Decl. Ex. B at 1) The Demand Letter then details the alleged facts and law on

which Plaintiff's request for payment is based. Given the similarity between the allegations in

the Demand Letter and Plaintiff's Complaint, it is evident that Plaintiff's counsel relied heavily

on the Demand Letter in drafting the Complaint. (Compare Cmplt. ¶¶ 2, 9, 11-15 (mostly

verbatim), 19-20, 27-28, 34 with Sprengle Decl. Ex. B at 1-3) The Demand Letter also attaches

four documents referenced and/or discussed in the Complaint: (1) the Agreement; (2) Plaintiff's

calculation of Gray Matter's "Weighted US Pipeline"; (3) an email from Plaintiff to Mr. Erhili

sending Gray Matter's January 31, 2019 invoice (the "Jan. 31 Invoice"); and (4) the Jan. 31

Invoice.  (Sprengle Decl. Ex. B, Attachments 1-4)

Orchestrade's outside corporate counsel responded on March 14, 2019 (the "Response

Letter").  (Sprengle Decl. Ex. C)  In that Letter, Orchestrade challenged Plaintiff's calculations

of the commissions due under the Agreement, noting, among other things, that:  (1) the sale to

Cantor-Fitzgerald was "essentially completed" before Gray Matter was engaged by Orchestrade,

and thus, Gray Matter was not entitled to a commission for that sale; and (2) the sale to Caxton

was for $750,000 not the $1 million claimed by Plaintiff.  (*Id.* at 1-2)  The Response Letter also

noted that the Agreement only provided for payment of commissions to Gray Matter "upon . . .

receiving payment from the client," and that, as of March 14, Orchestrade had received less than

a third of the payments owed by clients for deals generated by Gray Matter.  (*Id.* at 1-2)

The Response Letter also includes an entire section disputing Plaintiff's assertion in the

Demand Letter that Orchestrade never contested Plaintiff's "Weighted US Pipeline" calculation.

Namely, the Letter details the meeting between Plaintiff and Mr. Gordon Chan, the Vice

President and General Manager of Orchestrade, in late November during which Mr. Chan

calculated Plaintiff's "Weighted US Pipeline" at $1.28 million (as opposed to the $3.159 million

claimed by Plaintiff).  (*Id.* at 2)  The Letter also attaches Orchestrade's calculation of Plaintiff's

"Weighted US Pipeline."  (*Id.*, Attachment 1)  Notably, Plaintiff did not address the November

meeting between Mr. Chan and himself; he simply filed his lawsuit on April 17, 2019.

Finally, the Response Letter also disputes Plaintiff's claim that he was somehow an

employee of Orchestrade.  In addition to the express language in the Agreement disclaiming such

a relationship (*id.* at 3), the Letter notes that Plaintiff always conducted himself through Gray

6

Matter, including:  (1) providing a Form IRS W-9 Form to Orchestrade for Gray Matter (and not himself as an individual); (2) that all invoices were issued by Gray Matter; and (3) that all payments were made by Orchestrade to Gray Matter.  (*Id.*)  Moreover, as set forth in the Response Letter, on LinkedIn (a social media platform for professionals), Plaintiff never states that he was an employee of Orchestrade and, in fact, holds himself out to be an independent consultant that marketed Orchestrade's products.  (*Id.*)

## **ARGUMENT**

I.   **Service On Mr. Erhili Was Defective, There Is No Personal Jurisdiction Over Mr. Erhili, And Plaintiff Alleges No Possible Claim Against Mr. Erhili**

As this action was commenced in New York State Court, Kings County, the New York Civil Practice Law and Rules ("CPLR") governed Plaintiff's attempt at service on Mr. Erhili. Under CPLR 308, personal service must be made, at the very least, in the state in which Mr. Erhili resides, California.  As Plaintiff simply dropped off a copy of the Complaint at Orchestrade's New York office, service on Mr. Erhili was woefully inadequate.

Plaintiff also fails to allege facts sufficient to establish personal jurisdiction over Mr. Erhili.  As set forth in Defendants' notice of removal (Dkt. No. 1 at 11), Mr. Erhili is a resident of California and works at Orchestrade's headquarters in San Mateo, California.  Accordingly, personal jurisdiction over Mr. Erhili can only be effectuated under New York's long arm statute, CPLR § 302.

To establish jurisdiction over Mr. Erhili under Section 302, Plaintiff cannot rely exclusively on the fact that Orchestrade has an office in New York.  Instead, "[Plaintiff's] allegations must sufficiently detail [Mr. Erhili's] conduct so as to persuade a court that [Mr. Erhili] was a 'primary actor' in the specific matter in question; control cannot be shown based

merely upon [Mr. Erhili's] title or position within the corporation, or upon conclusory allegations that [Mr. Erhili] controls the corporation." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 230 (E.D.N.Y. 2015); *see also Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323–24 (S.D.N.Y. 1998) ("At the heart of this inquiry is whether the out-of-state corporate officers were primary actor[s] in the transaction in New York that gave rise to the litigation, and not merely some corporate employee[s] . . . who played no part in it") (quotations omitted).

Here, the Agreement was not signed by Mr. Erhili, and the Complaint alleges no facts even suggesting that Mr. Erhili was a "primary actor" in the transaction underlying the Agreement.  Indeed, the Complaint's only specific allegation is that Mr. Erhili is CEO of Orchestrade; the rest of the allegations regarding Mr. Erhili's conduct in the State are the very definition of conclusory.  (*See supra* at 3)

Finally, Plaintiffs alleges nothing to suggest that he had any work relationship – whether through his company, Gray Matter; as an independent contractor; or supposedly as an employee – with Mr. Erhili.  Plaintiff's agreement was with Orchestrade, not Mr. Erhili.  There is simply no reason why Mr. Erhili is a party to this proceeding.

## II.    Neither NYLL § 191 Nor FIFA Applies To <u>Independent Sale Representatives Like Plaintiff</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further

factual enhancement." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> "In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference [(like the Agreement)], or relied upon by the plaintiff in bringing suit [(like the Demand and Response Letters)], as well as judicially noticeable matters." *ACE Sec. Corp. Home Equity Loan Tr. v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014). "If a document relied on in the complaint contradicts the allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Id.* (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 5688, 592 (S.D.N.Y. 2013)).

*Cont'l Building Prods. Operating Co., LLC v. LaFarge North Am., Inc.*, 2018 WL 1583309, at *4 (S.D.N.Y. Mar. 27, 2018).

Plaintiff has tried to cram a simple breach of contract case into statutory and quasi-contract causes of action where it simply does not fit. Why? Because Plaintiff wants to benefit from the double recovery and attorneys' fees provisions of the NYLL. However, as demonstrated below, Plaintiff's alleged facts do not state any "plausible" claim under any of the causes of action he pleads, and the Complaint should be dismissed.

## A. Plaintiff Is Not Entitled To Relief Under Section 191 Of The NYLL

Plaintiff first alleges that Defendants violated Section 191 of the NYLL. Section 191 provides for the payment of wages by *employers* to certain natural persons, including manual workers, railroad workers, commission salespersons or clerical or other workers. Although unspecified in Plaintiff's sparse complaint, Plaintiff does not fit into any of these categories of employees (nor was Plaintiff an employee of Orchestrade at all).

First, by Plaintiff's own admission, Plaintiff is not a commission salesman as that term is defined in Section 190 of the NYLL. Under Section 190, a "Commission Salesman" cannot be a supervisor, manager, executive or administrator. Indeed, the New York Court of Appeals has

held that the definition of "commission salesman" "explicitly exempts executives." *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 614 (2008). The Agreement states – and Plaintiff expressly alleges – Plaintiff was the "*Head* of US Sales." (Sprengle Decl. Ex. A at § 1; Cmplt. ¶ 10 (emphasis added)). Such a position is clearly that of a supervisor, manager or executive. *See Cabrera v. Anjuna LLC*, 2018 WL 3528214, at *6 (Sup. Ct. N.Y. Cnty. July 20, 2018) (finding that a "sales director" with the "power to 'hire staff'" was a "person[] serving in an executive, managerial or administrative capacity" and thus, not entitled to relief under Section 191) (quotations omitted).

Second, Plaintiff does not qualify as a "clerical or other worker" as that category excludes all executives or professionals "whose earnings are in excess of nine hundred dollars a week." NYLL § 190(7). Under the terms of the Agreement, Orchestrade paid Gray Matter $15,583 per month (or $3,895.75 per week) as a retainer.[4] (Sprengle Decl. Ex. A at § 1); *Trujillo v. Transperfect Global, Inc*., 2017 WL 748831, at *2 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017) (dismissing Section 191 claim with prejudice where, as here, "Plainitff earn[ed] well in excess of $900 per week"). Not including the $30,000 in commissions that Orchestrade paid Gray Matter (Cmplt. ¶ 14), it is undisputed that Orchestrade paid Gray Matter over $165,000 in monthly retainers for the period beginning on March 12, 2018 and ending on January 31, 2019. Third, Plaintiff was clearly not a "manual worker" or "railroad worker." NYLL § 191(1)a. and b.

Further, regardless of category, NYLL §§ 190 and 191 apply only to "employees," and Plaintiff was clearly not an employee of Orchestrade. Although Plaintiff states in conclusory

---

[4] Further, Section 191 provides for the payment of wages to certain *natural* persons. The Agreement provided for the payment of a monthly retainer and commissions to Gray Matter, a corporate entity. (Sprengle Decl. Ex. A at §§ 3.1, 3.2)

fashion that "Orchestrade and Mr. Erhili were Plaintiff's employers within  the meaning of New York Labor Law" (Cmplt. ¶ 17), this is a legal conclusion that is directly at odds with the plain terms of the Agreement.  *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true").

The Agreement states that Gray Matter – Plaintiff's company and Orchestrade's contractual counterparty – was not an employee of Orchestrade "for any purpose whatsoever." (Sprengle Decl. Ex. A at § 5.1)  Moreover, the Agreement stated that Gray Matter was "not entitled to any employee benefits" and that Gray Matter could work for other entities so long as they were not competitors of Orchestrade.  (*Id.* at §5.1)  The Agreement also made clear that, for services provided under the Agreement, Gray Matter would issue invoices to Orchestrade, and then, Orchestrade would pay Gray Matter.  (*Id.* at §3.4)  Plaintiff, therefore, was never on Orchestrade's payroll, and in fact, Orchestrade made all payments to Gray Matter.[5]  Instead, Gray Matter, and Plaintiff by extension, was an independent contractor of Orchestrade.

B.   **Plaintiff Is Not Entitled To Relief Under FIFA**

Plaintiff pleads in the alternative that if he is not "an employee within the meaning of New York Labor Law," which he is not, "he was a freelance worker under the meaning of the Freelance Isn't Free Act" (or "FIFA").  Plaintiff is wrong again.

---

[5]  "Under New York law, a person's status as an employee or an independent contractor . . . depends upon factors such as whether the person: (1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule."  *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012).

FIFA, by its express terms, does not apply to independent sales representatives like Plaintiff and his company, Gray Matter.  Specifically, FIFA provides relief to "freelance workers," which that statute defines as "*any natural person* . . . that is hired or retained as an independent contractor" but states that "[t]his term does not include . . . [a]ny person who, pursuant to the contract at issue, is a sales representative as defined in section 191-a of the labor law. . . ."  NYC Admin. Code § 20-927.

Again, by the express terms of the Agreement, Orchestrade hired Gray Matter, a company, which is not a "natural person" as required by FIFA.  Even putting this fact aside, however, a "freelance worker" entitled to protection under FIFA also "does not include" "any person, who pursuant to the contract at issue, is a sales representative as defined in section 191-a of the labor law."  NYC Admin. Code § 20-927.  Under Section 191-a, a sales representative "means a person or entity who solicits orders in New York state" and is not a "Commission Salesperson" under NYLL § 190 "because he or she is an independent contractor."  NYLL § 191-a(d).  As independent contractors that solicited orders on behalf of Orchestrade (Sprengle Decl. Ex. A, § 5.1), Plaintiff and Gray Matter are "sales representatives as defined in section 191-a" and thus, are not subject to FIFA.

### C.     Sections 191-a Through 191-c Also Provide No Relief To Plaintiff

Even though Plaintiff and Gray Matter are "sales representatives as defined in Section 191-a," that section of the NYLL does not provide Plaintiff with relief as Orchestrade is not a "principal" as defined by that section.[6]

---

[6]  This is most likely the reason why Plaintiff did not include a violation of Sections 191-a through -c in his Complaint.

NYLL §§ 191-a through 191-c set forth when a "commission" is owed by "a principal" to a "sales representative."[7]  A "principal" is then defined as "a person or company engaged in the business of manufacturing, who distributes a product for *wholesale.*"  (Section 191-a(c) (emphasis added)).  As Justice Singh recognized in *McGovern Consulting, LLC v. Newstex, LLC*, 2014 WL 939294, at *2-3 (Sup. Ct. N.Y. Cnty. Mar. 7, 2014), the language and legislative history of Section 191-a make it clear that under Section 191-a, a "principal" only includes manufacturers of goods that sell wholesale.  It is undisputed that Orchestrade is not a wholesaler (it sells to software end users), and Plaintiff fails to allege anything to the contrary.

As one New York court has recognized, a failure (like Plaintiff's here) to allege that a defendant is a "manufacturer" that sells goods "wholesale" is fatal to a Section 191-a cause of action:

> Paragraph three of the complaint, which is the only portion of the complaint that describes AccessIT's business, states that AccessIT "is in the business of hardware and software sales and technical support for the installation, maintenance, and upgrading of approval product line for Information Technology Security and Infrastructure Technologies." . . .  Nowhere in this paragraph or elsewhere in the complaint does DeLuca state that AccessIT engages in the business of manufacturing, let alone the manufacture, production, importation, or distribution of products for wholesale.  *See* N.Y. Labor Law § 191–a(c)(1).  It is clear, therefore, that the pleadings do not articulate the necessary elements of the statute.

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 63–64 (S.D.N.Y. 2010).  *See also Szafran v. Sandata Tech., Inc.*, 452 Fed. Appx. 41, 44 (2d Cir. Dec. 20, 2011) ("Lastly, we agree with the District Court that Szafran has failed to provide any proof that Sandata violated New York Labor Law § 191-c.  Section 191-c applies to Sandata only if it is a 'principal,' defined as a 'person or

---

[7]  Further, NYLL § 191-a through -c apply only to alleged sales commissions, and thus would apply only to $21,000 of Plaintiff's alleged $71,000 in damages.

company engaged in the business of manufacturing, and who . . . [m]anufactures, produces, imports, or distributes a product for wholesale.' New York Labor Law § 191-a(c). Szafran described Sandata as a service provider and has pointed to no evidence . . . that Sandata has ever engaged in manufacturing, importing, or distributing a product for wholesale").

## III.   Quasi-Contract Claims Fail Where, As Here, There Is A Contract

Both Plaintiff's quantum meruit and unjust enrichment claims fail as a matter of law because, as Plaintiff concedes, there is a contract here.  "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Assoc. Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) (quotation omitted).  Here, Plaintiff claims that Defendants refused to pay him the amount due "pursuant to the contract" (Cmplt. ¶ 2), and that "[t]o formalize their agreement," the parties entered into a "Services Agreement" (*id.* ¶ 9). Quantum meruit is thus not available.

Plaintiff's unjust enrichment claim fares no differently.  "Quantum meruit and unjust enrichment are not separate causes of action and are therefore analyzed under the same principles." *Assoc. Mortg. Bankers, Inc.*, 159 F. Supp. 3d at 337 (quotation omitted).  "The theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates in the *absence of any agreement*." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (emphasis added; quotation omitted).

## V.   Plaintiff Has Not Alleged A Cause Of Action For Account Stated

Finally, Plaintiff cannot, and does not, allege a cause of action for account stated.  "There can be no account stated where no account was presented or where any dispute about the account is shown to have existed." *Abbot, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412, 413 (1st Dep't

1995)  Although Plaintiff generally alleges that "Defendants never objected or protested any such statements" (Cmplt. ¶ 23) and then makes the leap that such purported failure to object entitles Plaintiff to $71,000, such an allegation is made in bad faith as Plaintiff knew it was demonstrably false when made.  As Plaintiff is painfully aware, Defendants in the Response Letter vehemently disputed Plaintiff's demand for payment of $71,000 prior to Plaintiff filing his Complaint.

As discussed *supra*, on February 20, 2019, Plaintiff's counsel sent the Demand Letter to Defendants, seeking payment of $71,000 and making the same allegations that Plaintiff makes in his Complaint.  (Sprengle Decl. Ex. B)  The Demand Letter also attached a variety of documents including the Agreement and the January 31, 2018 invoice.  (*Id.*)  Defendants' outside general counsel sent the Response Letter on March 14, 2019, individually contesting each of Plaintiff's assertions and rejecting Plaintiff's demand.[8]  (Sprengle Decl. Ex. C)

Notably, the Response Letter noted that – contrary to Plaintiff's contentions in the Demand Letter (Sprengle Decl. Ex. B. at 2) and in the Complaint (Cmplt. ¶ 23) – Defendants *did* object to Plaintiff's calculation of the "Weighted US Pipeline."  (Sprengle Decl. Ex. C at 2)  Indeed, the Response Letter informs Plaintiff that "Vice President and General Manager, Gordon Chan, personally met with [Plaintiff] in late November 2018 to dispute Gray Matter's calculation of the 'Weighted US Pipeline.' . . .  During that November 2018 meeting, Mr. Chan informed [Plaintiff] that the percentage likelihood of success for closing a transaction, as well as, the

---

[8]  Although a court may generally not consider evidence outside of the pleadings on a Rule 12(b)(6) motion, the Demand and Response Letters are properly considered here as they are "documents or information contained in [D]efendant's motion papers [of which] plaintiff has knowledge or possession . . . and [on which Plaintiff] relied . . . in framing the [C]omplaint." *Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014).

anticipated revenue for most prospects listed by [Plaintiff] in the pipeline were grossly overstated, and not based on reality." (*Id.*) Plaintiff never responded to this Letter and Plaintiff's counsel has never disputed that this meeting between Mr. Chan and Plaintiff occurred. Given these facts, it is truly remarkable (and disappointing) that the Complaint falsely alleges that Defendants never objected to Plaintiff's "Weighted US Pipeline" figures.[9] (Cmplt. ¶¶ 31, 33)

Regardless of Plaintiff's bad faith, it is a fact that Defendants disputed – and still dispute – Plaintiff's claim for $71,000, and that dispute is enough for this Court to dismiss Plaintiff's claim for account stated with prejudice. *Nat'l Union Fire Ins. Co. of PA v. Cohen*, 1994 WL 719704, at *4 (S.D.N.Y. Dec. 28, 1994) (holding that plaintiff "cannot recover on an account stated" because there was "[e]vidence of an oral objection, even if not documented, is sufficient to rebut an inference of agreement by acquiescence") (quotation omitted).

---

[9] Defendants note that the Court may *sua sponte* impose sanctions on Plaintiff's counsel for knowingly violating Federal Rule of Civil Procedure 11(b)(3). *See Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 153-154 (E.D.N.Y. 2002); *see also In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263-264 (S.D.N.Y. 2010) (imposing sanctions because – like here – misstatement was material and "utterly lacking in support").

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

Dated:  June 19, 2019

Respectfully submitted,

BERG & ANDROPHY

By:  _/s/_ Jenny H. Kim_____
      Jenny H. Kim (jkim@bafirm.com)
      Chris L. Sprengle (csprengle@bafirm.com)
      120 West 45th Street, 38th Floor
      New York, New York 10036
      Tel: (646) 766-0073
      Fax: (646) 219-1977

      *Attorneys for Defendants Orchestrade, Inc.*
      *and Hakim Erhili*