UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

LIAM VARN,

                              Plaintiff,

                 v.

ORCHESTRADE, INC. and HAKIM ERHILI,

                              Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
**19-CV-2875 (MKB)**

MARGO K. BRODIE, United States District Judge:

   Plaintiff Liam Varn commenced the above-captioned action on April 17, 2019, against

Defendants Orchestrade, Inc. ("Orchestrade") and Hakim Erhili in the Supreme Court of the

State of New York, Kings County.  (Compl., annexed to Notice of Removal as Ex. A, Docket

Entry No. 1.)  Defendants removed the action to this Court on May 15, 2019 based on diversity

of citizenship.  (Notice of Removal, Docket Entry No. 1.)  Plaintiff alleges that Defendants failed

to pay him wages and commissions in violation of New York Labor Law, Article 19, Section 190

*et seq.* and Article 6, Section 650 *et seq.*, ("NYLL") and the New York City Freelance Isn't Free

Act, N.Y.C. Admin. Code § 20-927 *et seq.* ("FIFA"), and also asserts claims for quantum meruit,

unjust enrichment, and account stated.  (Compl.)

   Currently before the Court is Defendants' motion to dismiss the Complaint as to Erhili

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and as to both Defendants

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Plaintiff opposes the motion.[1]

---

   [1] (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 19; Defs. Mem. in Supp. of
Defs. Mot. ("Defs. Mem."), Docket Entry No. 20; Decl. of Chris L. Sprengle in Supp. of Defs.

For the reasons set forth below, the Court (1) denies Defendants' motion to dismiss the claims against Erhili for lack of personal jurisdiction, (2) denies Defendants' motion to dismiss Plaintiff's claim pursuant to FIFA, and (3) grants Defendants' motion to dismiss Plaintiff's NYLL, quantum meruit, unjust enrichment, and account stated claims.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

Plaintiff is a resident of Kings County, New York.  (Compl. ¶ 3).  Orchestrade is a Delaware corporation with principal offices in California.[2]  (*See* Notice of Removal ¶ 10.) Orchestrade is "a company that sells its financial software to end users."  (Defs. Mem. 1.)  Erhili is a resident of California and is the Chief Executive Officer of Orchestrade.  (Compl. ¶ 5; *see also* Notice of Removal ¶ 11.)

Plaintiff brings this action in connection with services he provided to Defendants between March of 2018 and January of 2019.  (Decl. of Liam Varn in Opp. to Defs. Mot. ("Varn Decl.") ¶ 3, Docket Entry No. 22-1.)[3]

---

Mot. ("Sprengle Decl."), Docket Entry No. 21; Pl. Mem. in Opp'n to Def. Mot. ("Pl. Opp'n"), Docket Entry No. 22.)

[2] Plaintiff pleads on information and belief that Orchestrade's principal place of business is in New York, (*see* Compl. ¶ 4), but in the Notice of Removal, Defendants state that Orchestrade's principal place of business is in California, (*see* Notice of Removal ¶ 10).  Thus, because the parties are completely diverse and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

[3] The parties have submitted declarations and other documentation in support of and in opposition to the motion, including a declaration by Plaintiff in support of his opposition, (*see* Decl. of Liam Varn in Opp. to Defs. Mot. to Dismiss ("Varn Decl."), Docket Entry No. 22-1), a declaration by Chris L. Sprengle in support of Defendants' motion, (Sprengle Decl.), and a declaration by Erhili in support of Defendants' Reply, (Decl. of Hakim Erhili in Supp. of Defs.

### a. The services agreement

On or about March 12, 2018, Plaintiff, through his wholly-owned company, Gray Matter, Inc., entered into an agreement with Orchestrade (the "Services Agreement").[4]  (Compl. ¶ 9; *see also* Services Agreement, annexed to Sprengle Decl. as Ex. A, Docket Entry No. 21-1.)  Plaintiff agreed in the Services Agreement to "act as Head of U.S. Sales for Orchestrade."  (Compl. ¶¶ 10–11.)  As Head of U.S. Sales, Plaintiff's responsibilities included "generation of new sale opportunities in the Americas, account management of existing US client base, and hiring and training all US sales and presale staff."  (*Id.*)  The Services Agreement provided for Plaintiff to

---

Reply, Docket Entry No. 23-1.)  The Court considers these documents in deciding Defendants' Rule 12(b)(2) motion.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)) (finding that in resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a district court may consider materials outside the pleadings); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) ("Because '[a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" (quoting *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., Ltd.*, No. 91-CV-3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992))).  However, in deciding Defendants' Rule 12(b)(6) motion, the Court only considers the documents otherwise specified *infra*.

[4]  The Court considers the Services Agreement in assessing the motion to dismiss because it is referenced in and integral to the Complaint, as Plaintiff's claims arise out of this agreement and neither side questions its authenticity.  *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) ("A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011))); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) ("Where a document is not [expressly] incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.").  To take into account "materials extraneous to the complaint," a plaintiff must "'*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'"  *Nicosia*, 834 F.3d at 230–31 (citation omitted).  In addition, "[e]ven where a document is considered 'integral' to the complaint,'" "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  *Id.* (citations omitted).

receive compensation in three forms: (1) a retainer of $15,583 per month, (2) a commission, and (3) an annual "guarantee" payment.  (*Id.* ¶ 12.)  As to the calculation of Plaintiff's commission compensation, the Services Agreement provided a specific method based on his revenue-generating activities.  (*Id.* ¶¶ 9–12, 19.)  As to the guarantee payment, the Services Agreement provided that, for the year of 2018, "Orchestrade will pay Gray Matter Inc a sum of $50,000 (USD), provided that by the end of December [of] 2018 Liam Varn can provide a Weighted US Pipeline of at least 2 million USD."  (*Id.* ¶ 29.)

The Services Agreement explicitly states that "the relationship between Orchestrade and Gray Matter Inc is such that personnel of both parties are neither agents nor employees of the other party for federal tax purpose or any other purpose whatsoever, and are not entitled to any employee benefits of the other party."  (Services Agreement 3.)

> **b.  Contacts between the parties before and after the execution of the Services Agreement**

In a sworn declaration filed in support of Plaintiff's Opposition (the "Varn Declaration"), Plaintiff asserts that he was put in contact with Erhili by a friend and that he had "three or four" conversations with [Erhili] about the position at Orchestrade before he "had any contact with any other Orchestrade employee."  (Varn Decl. ¶¶ 5–6.)  Erhili was Plaintiff's primary point of contact as the parties negotiated the terms of the Services Agreement.  (*Id.* ¶ 7.)  In or around January of 2018, prior to finalizing the agreement, Erhili "flew out to New York" and Plaintiff and Erhili "met in person."  (*Id.* ¶ 10.)

After executing the Services Agreement, Erhili communicated with Plaintiff in New York "several times weekly via text, phone or e-mail to communicate instructions . . . and provide oversight and supervision of [Plaintiff's] work."  (*Id.* ¶ 15.)

4

   c.   **The demand letter and the demand response email**

Plaintiff alleges that he successfully complied with the Services Agreement but that Defendants have only partially compensated him for those services by paying him the $15,583.00 retainer and "$30,000 in additional sums." (*Id.* ¶¶ 13–14.)

On November 29, 2018, Plaintiff, through his counsel, sent Defendants an email which included "a summary of his 2018 revenue-generation activities" and his "total Weighted US Pipeline Data" (the "November 2018 Summary"). (*Id.* ¶ 32.)

On January 31, 2019, Plaintiff sent an email to Erhili and attached an invoice for an outstanding balance of $71,000 (the "January 2019 Invoice"). (*Id.*) Plaintiff contends that the January 2019 Invoice is overdue and remains unpaid to date. (*Id.* ¶ 16.)

On February 20, 2019, Plaintiff sent Defendants a demand letter by email (the "Demand Letter") along with the January 2019 Invoice, a copy of the Services Agreement, and his calculation of the Weighted US Pipeline claiming an outstanding balance of $21,000 of the total $51,000 owed in commission and a $50,000 guarantee payment for 2018, totaling $71,000. (Compl. ¶¶ 15–16; Demand Letter, annexed to Sprengle Decl. as Ex. B, Docket Entry No. 21-2.) The Weighted US Pipeline Data reflected that Plaintiff was owed a 3% commission on $1,000,000 for a "Caxton" account, a 5% commission on $300,000 for a "Cantor Fitzgerald" account, and a 3% commission on $200,000 for a "Winshore/Lighthouse" account. (Weighted US Pipeline Data, annexed to Demand Letter, Docket Entry No. 21-1.) Plaintiff also stated in the Demand Letter that Orchestrade had not objected to his calculation of the revenue generation figures. (Demand Letter 2.)

Defendants, through counsel, responded to the Demand Letter in a March 14, 2019 email to Plaintiff stating that Orchestrade disagreed with Plaintiff's "calculation of the commissions

due for the new customer accounts with Cantor Fitzgerald, Winshore/Lighthouse, and Caxton" (the "Demand Response Email").[5]  (Demand Resp. Email 1, annexed to Sprengle Decl. as Ex. C, Docket Entry No. 21-3.)  In addition, Defendants stated that Plaintiff's assertion in the Demand Letter that "Orchestrade did not object to their calculation of the 'Weighted US Pipeline' is entirely false" and that "Orchestrade's Vice President and General Manager, Gordon Chan, personally met with [Plaintiff] in late November 2018 to dispute the calculation of the 'Weighted U.S. Pipeline'" and had informed Plaintiff that he had "grossly overstated" the anticipated revenue for most of the prospects.  (*Id.* at 2.)

## II.   Discussion

### a.   Standard of review

#### i.   12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  The showing a plaintiff must make to meet that burden is governed by a "sliding scale," which "'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of

---

[5]  For the reasons discussed above in footnote 4, the Court also considers the Demand Letter and Demand Response Email in assessing the motion to dismiss.

jurisdiction." *Id.* at 85 (quoting *Ball*, 902 F.3d at 197); *see also Holmes v. Apple*, --- F. App'x ---, ---, 2019 WL 6696939, *1 (2d Cir. Dec. 9, 2019) ("A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, 'a plaintiff must make a prima facie showing that jurisdiction exists.'" (quoting *Penguin Grp. (USA) Inc.*, 609 F.3d at 34)); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (same).  Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes,* 2019 WL 6696939, *1 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))).  After discovery, the plaintiff's *prima facie* showing must be factually supported. *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *Ball*, 902 F.3d at 197).  "Conclusory allegations based only on information and belief are not sufficient" to provide such factual support. *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010) (citing *Jazini*, 148 F.3d at 183–84).

The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL* (*Licci IV*), 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé*, 616 F.3d at 163); *Grundstein v. Eide*, 598 F. App'x 45, 46 (2d Cir. 2015) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). However, the Court need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini*, 148

F.3d at 185).

### ii.    12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.

N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b.    The Court has personal jurisdiction over Erhili

Defendants move to dismiss the claims against Erhili for lack of personal jurisdiction and

make several arguments in support.[6]  (Defs. Mem. 7.)  First, Defendants argue that Plaintiff

"cannot rely exclusively on the fact that Orchestrade has an office in New York" to establish

jurisdiction over Erhili under section 302 of the New York Civil Practice Law and Rules

---

[6] Defendants do not challenge the Court's exercise of personal jurisdiction over
Orchestrade.

("CPLR").[7]  (*Id.*)  Second, Defendants argue that "Plaintiff[] alleges nothing to suggest that he had any work relationship – whether through his company, Gray Matter; as an independent contractor or . . . as an employee – with . . . Erhili" and that "Plaintiff's agreement was with Orchestrade, not . . . Erhili."  (*Id.* at 8.)  Third, Defendants assert that "the Agreement was not signed by . . . Erhili, and the Complaint alleges no facts even suggesting that . . . Erhili was a 'primary' actor in the transaction underlying the Agreement."  (*Id.*)  Last, Defendants argue that "[a] close examination of Plaintiff's declaration reveals that he has not demonstrated 'purposeful acts' on the part of . . . Erhili *in relation to the Services Agreement*, so as to establish personal jurisdiction over . . . Erhili with respect to his claims for nonpayment, which arise from the agreement."  (Defs. Reply in Further Supp. of Defs. Mot. ("Defs. Reply") 2, Docket Entry No. 23.)

In his opposition, Plaintiff argues that exercise of personal jurisdiction over Erhili is proper because Erhili "engaged in manifold instances of purposeful activities directed toward New York, from which Plaintiff's claims arise," exercised "final decision making authority" over Orchestrade's conduct with regard to the Plaintiff, and "has not provided any evidence to rebut Plaintiff's jurisdictional allegations."  (Pl. Opp'n 2.)  In support, Plaintiff argues that Erhili "personally recruited [Plaintiff]; regularly contacted him via phone, text, and/or email . . . in order to direct [Plaintiff]'s efforts; and even flew out to New York to meet with [Plaintiff] in person on more than one occasion."  (*Id.* at 4.)  Plaintiff also argues that "even if . . . Erhili had

---

[7]  Defendants also assert that Erhili was not properly served because "Plaintiff's service of the Complaint on both Defendants was 'effectuated' by leaving a copy of the Complaint at Orchestrade's satellite New York office."  (Defs. Mem. 3.)  However, because Defendants concede that "counsel subsequently agreed to accept service on Mr. Erhili's behalf," and did not include any arguments regarding the insufficiency of service in their motion, the Court finds that Defendants have not properly moved to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

not engaged in repeated and sustained communications with the Plaintiff in New York, the

Court's exercise of jurisdiction would still be proper pursuant to [section] 302(a) because . . .

Erhili transacted business in New York via his position as CEO of Orchestrade."  (*Id.* at 5.)

"There are two types of personal jurisdiction: specific and general."  *Sonera Holding B.V.*

*v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014).  General jurisdiction permits a court

to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has

a connection to the forum.  *Id.* ("A court with general jurisdiction over a corporation may

adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's

contacts with the state.")  Specific jurisdiction requires a connection between the forum

exercising jurisdiction over the defendant and the underlying controversy that gave rise to the

claim.  *Id.* ("Specific or conduct-linked jurisdiction . . . 'depends on an affiliation between the

forum and the underlying controversy, principally, activity or an occurrence that takes place in

the forum state and is therefore subject to the State's regulation.'" (alteration omitted)

(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).  Under

New York law, courts exercise specific jurisdiction pursuant to CPLR section 302 and general

jurisdiction pursuant to section 301.[8]

Section 302(a)(1) permits courts to exercise specific jurisdiction over a non-domiciliary

"who in person or through an agent . . . transacts any business within the state or contracts

anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1); *see also Chloé*,

616 F.3d at 169 (discussing section 302(a)(1)).  Section 302(a)(1) has two prongs: (1) the

defendant must "have transacted business within the state," either itself or through an agent, and

---

[8]  Because Plaintiff only argues that the Court can exercise specific jurisdiction over
Erhili, the Court does not address whether Erhili is subject to general jurisdiction.

10

(2) the cause of action must "arise from that business activity." *Licci IV*, 732 F.3d at 168.

Under New York state law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, "so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting *Deustche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)) (internal quotation marks omitted); *see also Chloé*, 616 F.3d at 169 ("[A] defendant need not be physically present in New York to transact business there . . . so long as he engages in '[p]urposeful activities' or 'volitional acts' through which he 'avails [him]self of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws." (citations omitted)); *Licci ex. rel. Licci v. Lebanese Can. Bank, SAL* (*Licci II*), 673 F.3d 50, 61 (2d Cir. 2012) ("A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'" (quoting *Fischbarg*, 9 N.Y.3d at 380)); *C. Mahendra (NY) LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 3 N.Y.S.3d 454, 457 (App. Div. 2015) ("The statute applies where the defendant's New York activities were purposeful and substantially related to the claim." (citations omitted)).

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 381; *Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) ("Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity satisfying the first part of the test." (internal quotation marks, citations and alterations omitted)); *see also Licci IV*, 732 F.3d at 168 ("[W]hether a defendant has purposefully availed itself of the New York forum is a fact-

intensive inquiry inasmuch as it requires the trial court . . . 'to closely examine the defendant's contacts for their quality.'" (quoting *Licci v. Lebanese Can. Bank, SAL* (*Licci III*), 20 N.Y.3d 327, 338 (2012))); *Licci II*, 673 F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction).

The "arising from" prong of section 302(a)(1) does not require a causal link, but rather requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former . . . ." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 20 N.Y.3d at 339); *see also Moore v. Publicis Groupe SA*, No. 11-CV-1279, 2012 WL 6082454, at *8 (S.D.N.Y. Dec. 3, 2012) ("[The p]laintiff's claim for discriminatory pay and hiring arose directly from [the parent corporation's] hiring and salary freeze and exceptions thereto, such that [the parent corporation] had 'fair warning . . . of the possibility of being haled into court.'" (alterations in original) (quoting *Avecmedia, Inc. v. Gottschalk*, No. 03-CV-7831, 2004 WL 1586411, at *4 (S.D.N.Y. Jul. 14, 2004))).

To satisfy the "arising from" prong, a plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions taken in New York. *Best Van Lines*, 490 F.3d at 246; *Licci III*, 20 N.Y.3d at 339. "[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted" supports a finding of jurisdiction under section 302(a)(1). *Licci III*, 20 N.Y.3d at 341; *see also Eades*, 799 F.3d at 168 ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (citing *Chloé*, 616 F.3d at 170)).

In addition, even if a plaintiff can establish jurisdiction under New York law, the court must also determine whether the "exercise of personal jurisdiction over a foreign corporation comports with the due process protections established under the United States Constitution." *Licci IV*, 732 F.3d at 168 (first citing *Best Van Lines*, 490 F.3d at 242; then citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### 1.   Erhili transacted business in New York

Plaintiff's allegations that (1) Erhili served as Plaintiff's "primary point of contact" in multiple conversations during which they negotiated the Services Agreement, (Varn Decl. ¶¶ 6–7), (2) Erhili met with Plaintiff in person in New York prior to finalizing the Services Agreement, (*id.* ¶ 10), (3) Erhili directly and consistently supervised Plaintiff's work pursuant to the Services Agreement "via text message, phone, or email" while Plaintiff was located in New York, (*id.* ¶ 15), and (4) Erhili made decisions concerning Plaintiff's work for Orchestrade, (*id.* ¶ 17), are sufficient to allege that that Erhili purposefully availed himself of the privilege of conducting business in New York. *See Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 269 (E.D.N.Y. 2015) (finding exercise of specific jurisdiction over individual defendant CEO of plaintiff's employer appropriate where CEO "orally agreed to let plaintiff work for [employer] as a 'marketing assistance' provider" and plaintiff was required to participate in weekly conference call during which she reported directly to CEO); *Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 255 (E.D.N.Y. 2014) (finding specific personal jurisdiction over CEO and corporate defendant proper where CEO "initially negotiated the employment contract with plaintiff [in New York]; . . . authorized plaintiff to begin to work for him in office space [in New York]; and . . . forced plaintiff to work beyond his contract [in New York]"); *see also SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 549

(S.D.N.Y. 2003) (noting that preliminary contract negotiations are transactions under New York's long-arm statute).

In addition, Plaintiff has alleged a substantial relationship between Erhili's alleged contacts with New York and Plaintiff's claim for unpaid wages under the Services Agreement. Plaintiff has alleged that he negotiated the Services Agreement with Erhili and that Erhili supervised Plaintiff's work in carrying out his obligations under the Services Agreement, satisfying the arising-under requirement of 302(a)(1).  *See Tianbo Huang*, 13 F. Supp. 3d at 255 (finding the employment contract and defendants' activities in negotiating and carrying out the contract gave rise to plaintiff's claims under the NYLL and, *inter alia*, claims for breach of contract and unjust enrichment); *see also Williams*, 81 F. Supp. 3d at 272 (finding a "substantial relationship" between the work plaintiff alleged she undertook and the termination of her employment).

Accordingly, at this stage in the litigation, the Court finds that under section 302(a)(1), specific personal jurisdiction is proper as to Erhili.[9]

## 2. The Court's exercise of jurisdiction comports with due process

Plaintiff argues that "it was completely foreseeable that . . . Erhili might be haled into New York when he acted as CEO of a company with an office there and directed its agents

---

[9]  Because Erhili's alleged contacts with New York are sufficient to make out a *prima facie* showing of specific jurisdiction under section 302(a)(1), the Court does not address Plaintiff's argument that personal jurisdiction over Erhili would be proper under an agency theory.  *See Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 262 (S.D.N.Y. 2019) ("Because [the individual defendant's] own alleged in-state activities are sufficient to make out a *prima facie* showing of jurisdiction under the long-arm statute, the Court need not address [p]laintiffs' suggestion that [the corporate defendant's] contacts may be imputed to [the individual defendant] on an agency or alter ego theory or that [the individual defendant]'s New York contacts may be imputed to [the corporate defendant] on a co-conspirator theory.") (citations omitted).

(including [Plaintiff]) through numerous and sustained communications with New York."  (Pl. Opp'n 7.)

 "Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Licci IV*, 732 F.3d at 169 (citing *Int'l Shoe*, 326 U.S. at 316). "The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's [section] 302(a)(1) inquiry into whether a defendant transacted business in the State."  *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) (quoting *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014)).  When a claim "arises out of or relates to a defendant's contacts with the forum state," the "minimum contacts" showing is met if the plaintiff can show that the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Id.* (internal quotation marks and citation omitted); *see also Best Van Lines*, 490 F.3d at 242–43.  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers Squibb Co. v. Superior Court of Calif., S.F. Cty.*, 582 U.S. ---, ---, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919).

However, even if a plaintiff can demonstrate that a defendant purposefully availed itself of the forum state, the plaintiff must also show that the exercise of jurisdiction is "reasonable" under the Due Process Clause, that is, it does not "offend traditional notions of fair play and substantial justice."  *Chloé*, 616 F.3d at 172–73 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)) (internal quotation marks omitted).  In determining the reasonableness of an exercise of jurisdiction:

> A court must consider [(1)] the burden on the defendant, [(2)] the interests of the forum State, and [(3)] the plaintiff's interest in obtaining relief. It must also weigh in its determination [(4)] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [(5)] the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *Asahi*, 480 U.S. at 113).

Erhili has "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id*. at 164 (citing *Int'l Shoe Co*, 326 U.S. at 316). As discussed *supra*, Erhili purposefully availed himself of the New York forum by negotiating and executing the Services Agreement for Plaintiff's services to be performed in New York and by supervising and overseeing the work Plaintiff completed pursuant to the Services Agreement. Thus, Erhili's contacts with New York satisfy the minimum contacts inquiry. *See id*. at 171 (concluding that personal jurisdiction over defendant "comports with due process for the same reasons that it satisfies New York's long-arm statute"); *McGraw*, 295 F. Supp. 3d at 411 (finding that defendant's contacts with the forum state "satisfy the minimum contacts prong of the constitutional inquiry for the same reasons that they satisfy the statutory inquiry").

In addition to showing that Erhili has sufficient minimum contacts with New York, Plaintiff has established that exercising jurisdiction is reasonable as the majority of relevant factors weigh in Plaintiff's favor. Although Erhili may be somewhat inconvenienced by defending a suit in New York, it is not an unreasonable burden in light of his business contacts with New York and the modern conveniences of long-distance communication. *Tianbo Huang*, 13 F. Supp. 3d at 256–57 ("Although there may be some burden on [the out-of-state CEO defendant] in defending himself in New York, his choice to conduct business there suggests that it is not an unreasonable burden." (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129–30 (2d Cir. 2002); *see also Bank Brussels Lambert*, 305 F.3d at

16

129 ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."). The second and third factors also weigh in favor of the reasonableness of New York as a forum because New York has an interest in protecting the rights and safety of New York residents and Plaintiff resides in New York. *Id.* ("The second factor favors keeping New York as the forum state, since 'a state frequently has a manifest interest in providing effective means of redress for its residents,' as does the third factor, since plaintiff is located there." (quoting *Chloé*, 616 F.3d at 173)). The fourth and fifth factors appear to be neutral in this case.

Accordingly, the Court's exercise of jurisdiction over Erhili under these circumstances is reasonable and comports with due process.

### c. NYLL and FIFA claims

Plaintiff alleges claims under NYLL § 191 and FIFA. (*See* Compl. ¶¶ 19–36.) As discussed below, the Court finds that while Plaintiff fails to state a NYLL claim, Plaintiff does state a FIFA claim.

### i. Plaintiff fails to state a claim pursuant to NYLL § 191

In support of their motion to dismiss the Complaint, Defendants argue that Plaintiff does not fall into any of the categories of natural persons to which NYLL § 191 applies, (Defs. Mem. 9–10), and further argues that Plaintiff is not entitled to relief under section 191 because Plaintiff was not an employee of Orchestrade as explicitly stated in the Services Agreement, (*id.* at 9, 11).

Plaintiff argues in opposition to the motion that he "has pled sufficient facts to plausibly allege that Defendants were his employers within the definition of the NYLL." (Pl. Opp'n 13–

17

15.)  In addition, Plaintiff argues that he is not required to allege that he fell into any particular category of the NYLL and, even if he were, "there are no facts in the pleadings or in Defendants' motion to establish, as a matter of law, that he fits into the NYLL's definition of executives or professionals" to preclude him from bringing a claim under the NYLL.  (*Id.* at 16.)

NYLL § 191 "guarantees the timely payment of wages by employers."  *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010); *Ansoralli v. CVS Pharmacy, Inc*., No. 16-CV-1506, 2017 WL 8790986, at *5 (E.D.N.Y. Sept. 29, 2017) (noting that NYLL § 191 "governs the frequency of payments according to which employers must pay their workers" and "sets out different rules for manual workers, railroad workers, salespeople working on commission, and clerical and other workers").

Although some district courts have found otherwise, "New York State courts and the Second Circuit have indicated that § 191 does not provide a cause of action for wages altogether withheld, as opposed to wages not timely paid."  *Campbell v. Empire Merchs., LLC*, No. 16-CV-5643, 2018 WL 5456666, at *7 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, No. 16-CV-5643, 2019 WL 2206065 (E.D.N.Y. May 22, 2019); *see also id.* (collecting cases); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 590 (S.D.N.Y. 2012) ("The Second Circuit has expressed doubt, however, as to whether NYLL § 191 provides a remedy for *unpaid* wages, as opposed to wages not *timely paid*.").  As the Second Circuit explained in *Myers v. Hertz Corporation*:

> New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute; rather § 191 guarantees only that the wages the employer and employee have "agreed" upon be paid in a "timely" manner . . . according to the "terms of [the employee's] employment."

18

624 F.3d at 545 n.1 (citing *Jara v. Strong Steel Door, Inc.*, No. 14643/05, 2008 WL 3823769, at *11–12 (N.Y. Sup. Ct. Aug. 15, 2008)).

Plaintiff alleges that he "was partially paid under the contract," that he received "his $15,583.00 retainer" pursuant to the Services Agreement, and also received "$30,000.00 in additional sums," but that he has not received payment from Defendants for "the remaining amounts due under the [Services] Agreement." (Compl. ¶¶ 14–16.)  Accordingly, Plaintiff's claim is not that Defendants failed to timely pay him wages, but that Defendants failed to pay him the full amount owed under the Services Agreement.  *See Ansoralli*, 2017 WL 8790986, at *5 (finding plaintiffs failed to state a claim under NYLL § 191 because the plaintiffs "d[id] not allege that their paychecks were sent to them in an untimely manner, but rather that the timely paychecks did not include all the money that Plaintiffs allege they were owed"); *Perez-White v. Advanced Dermatology of N.Y. P.C.*, No. 15-CV-4858, 2016 WL 4681221, at *11 (S.D.N.Y. Sept. 7, 2016) (dismissing claim brought under section 191 because "[a]lthough [the plaintiff] frames her claim as one for failure to pay timely wages under NYLL § 191(3), it is clear that the gravamen of her claim is that Defendants "failed to provide [her] with full payment") (citations omitted).

Accordingly, Plaintiff's claim for incomplete payment is not properly asserted under NYLL § 191, and the Court therefore grants Defendants' motion and dismisses this claim. *Ansoralli*, 2017 WL 8790986, at *5 ("Courts in this Circuit, relying on New York State cases, have held that § 191 is 'an inappropriate vehicle for . . . recovery' where 'the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive,' and the plaintiff has not otherwise pleaded that payments were untimely."); *Jara*, 2008 WL 3823769, at *12 (dismissing claim brought under section 191 where it was

19

undisputed that plaintiffs were paid some amount on a timely and regular basis, and the "gravamen of plaintiffs' complaint [was] that the sums paid were not equal to what plaintiffs claim they were entitled to receive").

### ii.   Plaintiff states a claim pursuant to FIFA

Defendants argue that "Plaintiff and Gray Matter are sales representatives as defined in section 191-a" of the NYLL, and that because "FIFA, by its express terms, does not apply to independent sales representatives," Plaintiff is not entitled to relief under FIFA."[10]  (Defs. Mem. 12.)

Plaintiff argues that he has stated an unlawful payment violation pursuant to FIFA §§ 20-929 and 20-933(b)(3), (see Compl. ¶¶ 48–54), "because he is not clearly a 'sales representative' as defined under 191-a."  (Pl. Opp'n 12.)  In denying that he was "engaged by Orchestrade to strictly 'solicit orders in New York State,'" Plaintiff argues that the Services Agreement describes his duties to also include "generation of new sales opportunities in the Americas," "account management of existing US client base," and "hiring and training all of US sales and presales staff," and also argues that he is not a sales representative as defined under section 191-a because "New York Courts have interpreted 191-a to apply only to manufacturers of goods." (Id. at 12–13.)

FIFA § 20-929 provides in relevant part:

> a.  Except as otherwise provided by law, the contracted compensation shall be paid to the freelance worker either:

---

[10]  Defendants also argue that "[e]ven though Plaintiff and Gray Matter are 'sales representatives as defined in Section 191-a[,]' that section of the NYLL does not provide Plaintiff with relief as Orchestrade is not a 'principal' as defined by that Section," (Defs. Mem. 12), but concede in a footnote that "Plaintiff did not include a violation of Sections 191-a through -c in his Complaint," (id. at 12 n.7).  Because Plaintiff does not allege claims under NYLL § 191-a through -c, the Court does not address Defendants' arguments as to these sections of the NYLL.

20

> 1. On or before the date such compensation is due under the terms of the contract;
>           * * *
> b. Once a freelance worker has commenced performance of the services under the contract, the hiring party shall not require as a condition of timely payment that the freelance worker accept less compensation than the amount of the contracted compensation.

N.Y.C. Admin. Code § 20-929.  Only one New York court appears to have considered the applicability of this provision of the statute.  In *Sandles v. Magna Legal Services, LLC*, the New York City Civil Court found that "FIFA, effective May 15, 2017, 'establishes an administrative complaint procedure and private right of action,' and codifies certain protections for freelance work exceeding $800, including the requirement of an itemized, written contract upon request, timely payment in full, and protection from a hiring party's retaliation against the exercise of those, or any other, rights guaranteed by FIFA."  90 N.Y.S.3d 843, 846 (N.Y. Civ. Ct. 2018) (first quoting Michael Fahner, *Promising Protection: An Assessment of New York City's Freelance Isn't Free Act*, 14 NYU J.L. & Bus 1049, 1056 (2018); then citing N.Y.C. Admin. Code §§ 20-928[a], 20-929, 20-930).  FIFA § 20-929 "protects the rights to a written contract upon request and prompt payment."  *Sandles*, 90 N.Y.S.3d at 850.

FIFA § 20-927 defines a "freelance worker" as, "any natural person or any organization composed of no more than one natural person, whether or not incorporated or employing a trade name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation."  N.Y.C. Admin Code § 20-927.  Section 20-927 further provides that the term "freelance worker" does not include "[a]ny person who, pursuant to the contract at issue, is a sales representative as defined in section 191-a of the labor law."  *Id.*  A sales representative is defined as "an independent contractor," as opposed to an employee, who

"solicits orders in New York state and is not covered by [Sections 190(6)[11] and 191(1)(c)[12]]."

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 62 (S.D.N.Y. 2010) (citing N.Y. Labor Law

§ 191–a(d)); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 491 (S.D.N.Y. 2009)

("Per the statute, a sales representative is an independent contractor who 'solicits orders in New

York state.'" (quoting N.Y. Labor Law § 191–a(d) (McKinney 2002)); *Derven v. PH Consulting,*

*Inc.*, 427 F. Supp. 2d 360, 369 (S.D.N.Y. 2006) ("According to § 191–a(d), a 'sales

representative' is ' person or entity who solicits orders in New York state and is not covered by

[§ 190(6) and § 191(1)(c), which protect employees who earn commissions as part of their

salary] because he or she is an independent contractor.'" (quoting N.Y. Labor Law § 191-a(d)

(2006))).   "In other words, salaried employees who receive commissions are protected under

§ 191(1)(c), while independent contractors are covered by §§ 191–a through 191–c." *Derven*,

427 F. Supp. 2d at 369.

Courts in the Second Circuit have found that a plaintiff is not a sales representative

within the meaning of NYLL section 191-a(d) if the plaintiff does not allege solicitation of sales

in New York.  *See Oxford Techs., Inc. v. E./W. Indus., Inc.*, No. 18-CV-1992, 2019 WL

5696184, at *8 (E.D.N.Y. July 24, 2019) (dismissing claim under NYLL section 191-c and

finding that the plaintiff was not a sales representative because the plaintiff "failed to allege any

---

[11]  Section 190(6) defines a "Commission salesman" as an:

> employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions. The term "commission salesman" does not include an employee whose principal activity is of a supervisory, managerial, executive or administrative nature.

N.Y. Labor Law § 190(6).

[12]  Section 191(1)(c) describes the frequency of payment for commission salespersons.
N.Y. Labor Law § 191(1)(c).

facts demonstrating that it 'solicited' orders for [the corporate defendant] in New York"), *report and recommendation adopted*, No. 18-CV-1992, 2019 WL 4291584 (E.D.N.Y. Sept. 11, 2019); *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 292 (E.D.N.Y. 2002) (dismissing claims under NYLL sections 191-b and 191-c and finding that because there was "no evidence suggesting that [the plaintiff] 'solicit[ed] sales orders' in New York, and thus [the plaintiff] was not a 'sales representative' under the Labor Law").

In light of FIFA's exclusion of sales representatives from the definition of freelance worker, the Court considers whether Plaintiff sufficiently alleges that he was an independent contractor who may be considered a freelance worker within the meaning of FIFA. *See* N.Y.C. Admin Code § 20-929 (stating "the contracted compensation shall be paid to the *freelance worker* . . .") (emphasis added).

Plaintiff alleges that "at all relevant times," he "was a freelance worker under the meaning of FIFA" and Defendants "were hiring parties under the meaning of FIFA." (Compl. ¶¶ 49–50.) As an initial matter, the Court notes that Plaintiff's claim that he was a freelance worker rather than a sales representative or employee of Orchestrade is supported by the explicit language of the Services Agreement, which specifies that Plaintiff is not an employee of Orchestrade and also specifies that he is not entitled to employee benefits of any kind. (Services Agreement 3.) Plaintiff's lack of a salary or employee benefits as specified in the Services Agreement supports his claim that he was an independent contractor. *See Derven*, 427 F. Supp. 2d at 369–70 (finding plaintiff was "clearly not an independent contractor," and did not "fall within the definition of sales representative" where plaintiff admitted that "she received a fixed salary and benefits in addition to her 10% commissions and was employed solely as a salesperson and project manager — not in any other capacity").

23

Moreover, neither the allegations in the Complaint nor the terms of the Services Agreement suggest that Plaintiff was a sales representative under NYLL section 191-a and therefore precluded from asserting a claim under FIFA. Although the Services Agreement states that Plaintiff's responsibilities included the "generation of new sales opportunities in the Americas," it did not indicate that Plaintiff was responsible for specifically soliciting sales within New York. (Sales Agreement 1.) The language that Plaintiff was responsible for the "generation" of "sales opportunities" in "the Americas" does not support a finding that Plaintiff solicited orders in New York State to make him a sales representative. *See Gould Paper Corp.*, 614 F. Supp. 2d at 491 ("Even assuming defendants had customers in New York, however, would not be enough; defendants must have actually solicited the orders in New York.").

Because Plaintiff does not allege that he solicited orders in New York there is nothing in the record to suggest that Plaintiff was a sales representative within the meaning of the section 191-a. *See Oxford Techs., Inc.*, 2019 WL 5696184, at *8 (dismissing claim under NYLL § 191-c and finding plaintiff was not a sales representative because the plaintiff "failed to allege any facts demonstrating that it 'solicited' orders for East/West in New York"); *McCoy Assocs., Inc.*, 218 F. Supp. 2d at 292 (dismissing claims under NYLL sections 191-b and 191-c and finding that the plaintiff was not a sales representative because there was "no evidence suggesting that [the plaintiff] 'solicit[ed] sales orders' in New York, and thus [the plaintiff] was not a 'sales representative' under the Labor Law"); *Kaye v. Artmatic Corp.*, 625 N.Y.S.2d 216, 217 (1995) ("We note that the statute should be interpreted with an emphasis placed on the whether the decedent, if found to be a sales representative, solicited orders from New York . . . ."); *cf. Organicnaturalsnacks.com, LLC v. United Nat. Foods, Inc.*, No. 1:15-CV-0741, 2016 WL 1275049, at *6 (N.D.N.Y. Mar. 31, 2016) ("Plaintiff has alleged facts plausibly suggesting

(albeit barely) that Defendant violated New York Labor Law § 191-b . . . because (a) Plaintiff allegedly contracted to serve as a sales representative for Defendant, (b) Plaintiff allegedly solicited orders from prospective New York State customers from its New York office on Defendant's behalf, and (c) Defendant allegedly failed to timely pay Plaintiff commissions upon terminating the Agreement.").

Accepting as true Plaintiff's allegations that he was paid a monthly retainer for his "generation of new sales opportunities in the Americas," and in light of the Services Agreement's explicit statement that Plaintiff is not an employee and the absence of any indication that Plaintiff specifically solicited sales in New York, the Court finds that Plaintiff was not a sales representative as defined by FIFA and section 191 of the NYLL.  *See Oxford Techs., Inc.*, 2019 WL 5696184, at *8 (finding plaintiff was not a sales representative because it failed to allege any facts demonstrating that it solicited orders in New York).

In addition, because Plaintiff alleges that he had a contract to perform freelance services, pursuant to which Defendants have failed to fully compensate him for the services he rendered, the Court finds that Plaintiff has plausibly stated a claim for relief under FIFA.  *See* N.Y.C. Admin Code §§ 20-927, 20-929.

### d.  Quasi-contract claims

Plaintiff alleges claims for quantum meruit, unjust enrichment, and account stated based on his allegations that he successfully complied with the Services Agreement but that Defendants have only partially compensated him for those services by paying him the $15,583.00 retainer and "$30,000 in additional sums."  (Compl. ¶¶ 13–14.)  As discussed below, the Court finds that Plaintiff fails to state claims for quantum meruit, unjust enrichment, and account stated.

###### i.    Plaintiff fails to state claims for quantum meruit and unjust enrichment

Defendants argue that "Plaintiff's quantum meruit and unjust enrichment claims fail as a matter of law because . . . there is a contract between the parties governing the dispute." (Defs. Mem. 14.)  In support, Defendants argue that "Plaintiff does not dispute that the Services Agreement" is valid and the Complaint makes clear that "Plaintiff's claims for alleged unpaid commissions and bonus arise under that agreement." (*Id.*)

Plaintiff argues that, although he "cannot ultimately recover both on contract claims and on quasi-contract claims of unjust enrichment and quantum meruit," Defendants' argument that the Court should dismiss his quasi-contract claims fails because (1) "Plaintiff has not pled a breach of contract claim," and (2) "Defendants have already previously taken the position that certain accounts were not covered by the contract." (Pl. Opp'n 18.)  Plaintiff also argues that "the parties disagree whether the [Services Agreement] governed certain elements of the 'subject matter dispute'" and also disagree as to whether the Services Agreement covers commission from two specific transactions, namely "the Cantor Fitzgerald transaction and/or the Winshore/Lighthouse transaction." (*Id.* at 19.)

Applying New York law, the Court "analyze[s] quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996)).  "New York law does not permit recovery in quantum meruit . . .  if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Id.* (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*,  70 N.Y.2d 382, 388 (N.Y. 1987)); *see also Abcon Assocs., Inc. v. Haas & Najarian*, 694 F. App'x 42, 44 (2d Cir. 2017) (vacating the district court's judgment "to the extent it

26

awarded legal fees to [plaintiff] in *quantum meruit*" and finding "there can be no recovery

in *quantum meruit* in this case because the valid and enforceable agreement between the parties

already addressed the conditions under which [plaintiff] would be paid for its legal services");

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337

(E.D.N.Y. 2016) ("That is because recovery on a quantum meruit claim is based on a 'quasi

contract' theory which 'only applies in the absence of an express agreement, and is not really a

contract at all, but rather a legal obligation imposed in order to prevent a party's unjust

enrichment.'" (quoting *Clark–Fitzpatrick, Inc.*, 70 N.Y.2d at 388)); *Marshall v. Hyundai Motor

Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) ("[W]hen 'a matter is controlled by contract,' the

plaintiff has no valid claim for unjust enrichment under New York law." (quoting *Goldman v.

Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d

384, 397 (W.D.N.Y. 2010) ("An unjust enrichment claim therefore does not lie where a valid

contract covers the subject matter that gives rise to the alleged enrichment.").  Indeed, "[t]he

New York State Court of Appeals has . . . held that '[a]n unjust enrichment claim is not available

where it simply duplicates, or replaces, a conventional contract or tort claim.'"  *Gov't Emps. Ins.

Co. v. Zemlyansky*, No. 13-CV-4966, 2015 WL 5692899, at *2 (E.D.N.Y. Sept. 27, 2015)

(quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).

　　　　Courts in the Second Circuit have allowed unjust enrichment claims to proceed as

alternative claims to other contract or tort claims "where there was some question as to the

validity of the underlying agreement."  *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316

(N.D.N.Y. 2019) (collecting cases); *Associated Mortg. Bankers, Inc.*, 159 F. Supp. 3d at 337

("New York courts 'have permitted pleading [unjust enrichment] in the alternative in the face of

a written agreement . . . when there is a dispute as to the agreement's validity or

enforceability.'" (quoting *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009)); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Where the complaint asserts claims on theories of both contract and quantum meruit and there is a genuine dispute as to the existence of a contract, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories.").

Nevertheless, as argued by Defendants, when a valid contract exists that covers the subject of the dispute, a plaintiff is precluded from bringing a claim for unjust enrichment, because the focus of the inquiry is on the subject of the contract. *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157–58 (2d Cir. 2012) ("Under New York law, 'quasi-contractual . . . relief is unavailable where [as here] an express contract covers the subject matter.'" (quoting *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988)).

Plaintiff's unjust enrichment and quantum meruit claims, as alleged in the Complaint, are based on Plaintiff's detrimental reliance on the Services Agreement and Defendants' alleged unjust enrichment as a result of their failure to pay Plaintiff the full value of his services rendered as the Head of U.S. Sales at Orchestrade under the Services Agreement.  (*See* Compl. ¶¶ 55–67.) Plaintiff alleges that "[a]t the request of Defendants, and to their benefit Plaintiff provided the 'Head of US Sales' services," and that Defendants were unjustly enriched by "the benefits that Plaintiff conferred, in the amount of the reasonable value of services."  (*Id.* ¶¶ 64–65.)  Plaintiff further alleges that pursuant to the Services Agreement, he was engaged to "act as Head of US Sales for Orchestrade," (*id.* ¶ 10), and that he was to be compensated for the services rendered with a retainer of $15,583 a month, a commission, and an annual guarantee payment, (*id.* ¶ 12). In addition, Plaintiff alleges that he "relied on the representations of Defendants and did, in fact,

render 'Head of US Sales' services," (*id.* ¶ 58), and that "Defendants have wrongfully benefitted from the 'Head of US Sales' services provided by Plaintiff without providing wages for the same," (*id.* ¶ 60).

Based on the allegations in the Complaint, Plaintiff cannot assert an unjust enrichment claim or quantum meruit claim in addition to his claims seeking to recover payment pursuant to the Services Agreement, because the Services Agreement covers the same subject matter. *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 208 (S.D.N.Y. 2016) (finding on a motion to dismiss that plaintiff's unjust enrichment claim was precluded by the "existence" of a written agreement for the purchase of a piece of artwork, where the agreement "clearly govern[ed] the subject matter at issue"); *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014) ("The Policy is central to plaintiff's unjust enrichment theory: Plaintiff argues that [the defendant] was unjustly enriched because plaintiff paid premiums pursuant to the Policy's terms, but defendant did not provide it coverage as the Policy required. Therefore, plaintiff cannot plead its unjust enrichment claim in the alternative to its breach of contract claim. Plaintiff's unjust enrichment claim . . . [is] dismissed.").

Moreover, the parties do not dispute the validity of the Services Agreement. (*See* Defs. Mem. 3 n.3 ("Plaintiff alleges, and Defendant does not contest, that Plaintiff was engaged to provide services through his company, Gray Matter, which is the actual party to the Services Agreement.").) Because the Services Agreement governs the dispute over Plaintiff's compensation for services rendered pursuant to it, Plaintiff's quantum meruit and unjust enrichment claims fail. *See Foley v. Wilson*, No. 18-CV-504, 2020 WL 30338, at *6 (S.D.N.Y. Jan. 2, 2020) ("Because there is an enforceable oral contract governing the parties' dispute, Plaintiff's unjust enrichment claim is precluded." (citing *Bracken v. MH Pillars Inc.*, 290 F.

Supp. 3d 258, 266 (S.D.N.Y. 2017)); *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27

F. Supp. 3d 494, 516 (S.D.N.Y. 2014) (dismissing unjust enrichment claim in light of

defendant's "admission" that "it ha[d] entered into [an agreement with the plaintiff] and ha[d]

not contested the contract's validity").

Accordingly, the Court dismisses Plaintiff's claims for quantum meruit and unjust

enrichment.

### ii.   Plaintiff fails to state a claim for account stated

Defendants argue that "Plaintiff cannot, and does not, allege a cause of action for account

stated" because Plaintiff's allegation that Defendants never objected to or protested account

statements "is made in bad faith as Plaintiff knew it was demonstrably false when made." (Defs.

Mem. 15.)  Defendants further argue that "[r]egardless of Plaintiff's bad faith, it is a fact that

Defendants disputed – and still dispute – Plaintiff's claim for $71,000 and that dispute is enough

for this Court to dismiss Plaintiff's claim for account stated with prejudice." (*Id.* at 16.)

Plaintiff argues that Defendants' arguments in opposition to his account stated claim "are

clearly inappropriate at this stage, as they rely on factual assertions," and that it is "premature for

the Defendants to try to argue for dismissal based on factual assertions of having objected to the

account stated." (Pl. Opp'n 19–20.)  Plaintiff also argues that the allegations that he "presented

statements of accounts due pursuant to the agreement between the parties, and that Defendants

did not timely or clearly dispute or object to them" are "sufficient to state a claim for account

stated, and Defendants must submit evidence to support their allegations that the accounts were

disputed or objected to within a reasonable time." (*Id.* at 22.)

To state a claim for account stated under New York law, "the plaintiff must plead that:

(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay

the amount stated." *Consol. Energy Design Inc. v. Princeton Club of N.Y.*, 590 F. App'x 115, 116 (2d Cir. 2015) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). "Importantly, '[t]he second and third requirements . . . may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time.'" *Id.*; *see id.* (finding the defendant's objection made three years after an invoice was submitted to it "appears not to have come within a 'reasonable' amount of time under New York law" (citing *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 720 (S.D.N.Y. 1986)); *see also Kimm v. Kyu Sung Cho*, 706 F. App'x 1, 4 (2d Cir. 2017) (finding the defendant's objection untimely when made within a month of receiving billing statements). "New York decisions have found that an account is not agreed to where the defendant has raised an objection to the plaintiff's billings or the quality of the plaintiff's work." *United Capital Funding Corp. v. N.Y.C. Dep't of Educ.*, 457 F. App'x 53, 55 (2d Cir. 2012); *see also id.* (collecting cases).

Plaintiff's allegations that he presented statements of accounts due pursuant to the Services Agreement and Defendants did not timely or clearly dispute or object to them would typically suffice to state a claim for account stated absent any contrary allegations in the Complaint. *See Consol. Energy Design Inc.*, 590 F. App'x at 116. However, documents referenced and relied on by Plaintiff in stating his claims in the Complaint demonstrate that Defendants did object to the November 2018 Summary and the January 2019 Invoice, negating Plaintiff's claim that Defendants agreed to pay the amount stated. The Demand Letter and the Demand Response Email, which are incorporated into the Complaint by reference and are integral to Plaintiff's claim that he is owed money that he demanded from Defendants, show that Defendants objected to the total Weighted US Pipeline Data Plaintiff provided in the November

2018 Summary within three and a half months of receiving the November 2018 Summary and

within one and a half months of receiving the January 2019 Invoice.  (*See* Demand Resp. Email.)

The cases cited by Plaintiff to argue that the three-and-a-half-month period between the

November 2018 Summary and Defendants' Demand Response Email rendered their objection

untimely address a period of time of five months or longer, and do not support Plaintiff's

argument that a three-and-a-half-month time period is untimely.  *Compare Darius Toraby*

*Architects, P.C. v. St. Barnabas Hosp. Corp.*, No. 105340/05, 2006 WL 6849242 (N.Y. Sup. Ct.

June 21, 2006) ("Defendant's objection to plaintiff's demand, five months after it was last made,

is unreasonable as a matter of law."), *and Morrison Cohen Singer & Weinstein, LLP v. Waters*,

786 N.Y.S.2d 155, 156 (App. Div. 2004) (involving an invoice sent to the defendant

approximately nine months before objections from the defendant), *with DiMare Homestead, Inc.*

*v. Alphas Co. of N.Y.*, No. 09-CV-6644, 2012 WL 1155133, at *23 (S.D.N.Y. Apr. 5, 2012)

(finding the plaintiff failed to demonstrate the untimeliness of the defendant's objection because

the plaintiff "offer[ed] no authority that a time period of less than three months is sufficient to

waive [the defendant's] right to object"), *aff'd*, 547 F. App'x 68 (2d Cir. 2013).  In view of the

fact that courts have found periods of three months or less to be timely but five months or more

to be untimely, the Court finds Defendants' objection within three and a half months to be

timely.  Moreover, Defendants objected to the January 2019 Invoice in less than two months,

rendering that objection timely as well.

Accordingly, because the Court finds that Plaintiff cannot show that Defendants agreed to

pay the January 2019 Invoice and the Demand Response Email indicates that Defendants

disputed and made a timely objection to the November 2018 Summary and January 2019

Invoice, the Court finds that Plaintiff fails to state a claim for account stated.  *See DiMare*

*Homestead, Inc.*, 2012 WL 1155133, at *23 (S.D.N.Y. Apr. 5, 2012) (finding pursuant to Rule 52(a) of the Federal Rules of Civil Procedure that the plaintiff failed to state a claim for account stated where the plaintiff failed to demonstrate the untimeliness of the defendant's objection), *aff'd*, 547 F. App'x 68 (2d Cir. 2013).

### III.  Conclusion

For the foregoing reasons, the Court (1) denies Defendants' motion to dismiss the claims against Erhili for lack of personal jurisdiction, (2) denies Defendants' motion to dismiss Plaintiff's claim pursuant to FIFA, and (3) grants Defendants' motion to dismiss Plaintiff's NYLL, quantum meruit, unjust enrichment, and account stated claims.

Dated:  March 29, 2020
       Brooklyn, New York

SO ORDERED:

  s/ MKB
MARGO K. BRODIE
United States District Judge