**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LIAM VARN and GRAY MATTER INC.,

*Plaintiffs*,

v.

ORCHESTRADE, INC. and HAKIM ERHILI,

*Defendants*.

Civil Action No. 1:19-cv-2875
(MKB/RML)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

i

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT ...............................................................................................................5

**I.  PLAINTIFFS HAVE ESTABLISHED THEIR RIGHT TO SUMMARY JUDGMENT ON THEIR CLAIM FOR BREACH OF SECTION 3.2 OF THE AGREEMENT, FOR COMMISSION ON "TOTAL US SALES." ............................5**

  A.  ███████████ should be included in Mr. Varn's commission under the plain language of the Agreement, which is fully integrated and includes a written-modification-only clause. ...........................................................................8

    1.  Even viewing the evidence in the light most favorable to Orchestrade, the facts are clear that the ███████████ account falls within the ambit of Section 3.2. ............................................................................9

    2.  The Agreement's No-Modification-Clause and the Parole Evidence Rule preclude Orchestrade's interpretation that ███████████ was impliedly not included in "total US sales". ..............................................12

    3.  Orchestrade should be estopped from arguing that ███████████ was not included under Section 3.2, because it only took this position after Mr. Varn worked on the deal and helped it close. ...............................14

**II.  PLAINTIFFS HAVE ESTABLISHED THE APPLICABILITY OF FIFA, SUCH THAT THEY ARE ENTITLED TO $██ IN STATUTORY DAMAGES AND ATTORNEYS' FEES IN AN AMOUNT TO BE DETERMINED AT TRIAL .........15**

  A.  Mr. Varn is a freelance worker as defined by FIFA. ................................15

  B.  Defendant Orchestrade is a "hiring party" as defined by FIFA. ..............15

  C.  FIFA was effective at the time the Agreement was entered into and is geographically applicable. .........................................................................16

  D.  Underpayment pursuant to the Agreement constitutes a violation of FIFA. ...........16

**III. THE DAMAGES FOR ORCHESTRADE'S UNDERPAYMENT PURSUANT TO SECTION 3.2 OF THE AGREEMENT ARE ESTABLISHED BY THE UNDISPUTED FACTS. ...............................................................................17**

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*,
    407 F. Supp. 3d 274 (S.D.N.Y. 2019) ......................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................4

*Clement v. Fuchs*,
    2020 NY Slip Op 31520[U] (Sup. Ct., NY County 2020) ....................................16

*Comprehensive Habilitation Servs. v. Commerce Funding Corp.*,
    2009 U.S. Dist. LEXIS 30386 (S.D.N.Y. 2009)...................................................13

*Comprehensive Habilitation Servs. v. Commerce Funding Corp.*,
    2009 U.S. Dist. LEXIS 30386 (S.D.N.Y. 2009)...................................................12

*FDIC v. Great Am. Ins. Co.*,
    607 F.3d 288 (2d Cir. 2010) .................................................................................5

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (2002)..........................................................................................12

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001) ...................................................................................4

*Husser v. New York City Dep't of Educ.*,
    137 F. Supp. 3d 253 (E.D.N.Y. 2015) ...................................................................4

*Jaramillo v. Weyerhaeuser Co.*,
    536 F.3d 140 (2d Cir. 2008) .................................................................................4

*Jillian Mech. Corp. v. United Serv. Workers Union Local 355*,
    882 F.Supp.2d 358 (E.D.N.Y. 2012)......................................................................4

*MHR Capital Partners LP v. Presstek, Inc.*,
    12 N.Y.3d 640 (2009)..........................................................................................12

*Monclova v. City of New York*,
    2014 WL 4828813 (E.D.N.Y. 2014) ......................................................................5

*Owens v. New York City Hous. Auth.*,
    934 F.2d 405 (2d Cir. 1991) .................................................................................4

*Stroll v. Epstein*,
  818 F. Supp. 640 (S.D.N.Y. 1993) ........................................................................12

*Turner v. Sheppard Grain Enters., LLC*,
  68 Misc 3d 385 (Sup Ct, NY County 2020) ....................................................15, 16

*Wellesley v. Debevoise & Plimpton LLP*,
  346 Fed.Appx. 662 (2d Cir. 2009)............................................................................5


<u>Statutes</u>

Fed. R. Civ. P. 56(a) .................................................................................................4

NYC Admin. Code § 20-927 ...................................................................................15

NYC Admin. Code § 20-929 .............................................................................16, 17

NYC Admin. Code § 20-933 ...................................................................................17

## PRELIMINARY STATEMENT

Plaintiffs Liam Varn ("Mr. Varn") and Gray Matter Inc. ("Gray Matter") (collectively with Mr. Varn, "Plaintiffs"), by their attorneys, Thompson & Skrabanek, PLLC, respectfully submit this Memorandum of Law in support of their instant motion for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting them partial summary judgment.

## INTRODUCTION

This is an action brought by a freelance worker—Liam Varn and his single-employee entity, Gray Matter Inc. (collectively, "Plaintiffs")—to recover for underpayment on a services contract with their sole client, Defendant Orchestrade Financial Systems ("Orchestrade"), for the fruit of Mr. Varn's labors over an approximate 10-month period in 2018 and early 2019.  The dispute concerns two particular provisions in the applicable contract—a "Commission" (Section 3.2) and a "2018 Guarantee" (Section 3.3)—as well as alleged retaliatory actions taken by Orchestrade.

Plaintiffs submit that the Court can significantly narrow the issues for trial by granting summary judgment on Plaintiffs' claims related to Section 3.2 of the contract, for $█████ in unpaid Commissions.  The parties' dispute on this topic concerns whether one particular Orchestrade account—that of ████████████—was subject to the Agreement.  The Court can rule in Plaintiffs' favor because the plain language of the agreement and the undisputed facts establish Defendants' liability.  The commission owed to Mr. Varn under the agreement was expressly based on "total US sales."  Moreover, the Agreement is fully-integrated and it is undisputed that neither the Agreement nor any signed writing ever exempted ████████████ from Plaintiffs' sales flow.

1

Because Orchestrade underpaid Plaintiffs by $▮▮▮, the Court can also grant summary judgment to Plaintiffs on their claims under New York City's Freelance Isn't Free Act (New York City Administrative Code (NYCAC) § 20-927 *et seq*.) ("FIFA").  The undisputed facts establish that Mr. Varn has met all the prerequisites for stating a claim under FIFA, and that Orchestrade violated FIFA by not paying Mr. Varn $▮▮▮ in compensation for services rendered.  As a result, the Court should grant summary judgment in Mr. Varn's favor in the amount of $▮▮▮ and find Defendants liable for reasonable attorneys' fees, interest and costs. Plaintiffs' concede that their remaining claims for breaches of other contractual provisions and FIFA violations will have to be resolved at trial.

## STATEMENT OF FACTS[1]

Plaintiff Liam Varn is a New York resident with 18 years of experience in sales and business development in the area of software and financial services.  In early 2018, Mr. Varn was engaged by Defendant Orchestrade Financial Systems, Inc. ("Orchestrade"), a young but fast-growing company that offered a suite of financial software systems to hedge funds and other money management firms.

On March 12, 2018, the parties executed a three-page "Services Agreement" (the "Agreement", Exhibit A), under which Mr. Varn would serve as Orchestrade's "Head of US Sales".  SUMF ¶ 3.   Mr. Varn entered the Agreement through his wholly-owned entity Gray Matter Inc., which employs Mr. Varn only.  SUMF ¶¶ 2-3 (Ex. A).

---

[1] This recitation is supported by the accompanying Local Rule 56.1 Statement of Undisputed Facts, submitted herewith, which includes detailed citations to the record ("[SUMF ¶ ___]"), and by exhibits submitted with the Declaration of John J. Thompson, dated April 21, 2021 ("[Ex. ___]").

2

The Agreement stipulates that Mr. Varn would serve as an independent contractor to Orchestrade, although it also obligated him to avoid business conflicts.  SUMF ¶ 3 (Ex. A, Secs. 5.1 and 4.1).  Under the Agreement, Mr. Varn's responsibilities included "generation of new sales opportunities in the Americas, account management of existing US client base, and hiring and training of all US sales and presales staff." SUMF ¶ 3 (Ex. A, Sec. 1).

The Agreement called for Orchestrade to pay Mr. Varn in three ways: (1) through a monthly retainer (SUMF ¶3 (Ex. A, Sec. 3.1)); through an annual commission on "total US sales" (Sec. 3.2); and through a "2018 Guarantee" (Ex. A Sec. 3.3).

Mr. Varn worked essentially full time with Orchestrade from March 12, 2018 until January 31, 2019.  SUMF ¶ 4 (Ex. I, Varn Decl., ¶¶ 12-16).  In this ten-month period, Mr. Varn helped close three major deals for Orchestrade:

- ████████████ executed a contract with Orchestrade on July 10, 2018.  SUMF ¶ 7.  Mr. Varn managed the final round of negotiations and contract drafting to finalize the deal.  SUMF ¶ 10-11.

- ████████████ executed a with Orchestrade on October 10, 2018. SUMF ¶ 13. Mr. Varn managed the negotiations and contract drafting to finalize the deal. SUMF ¶ 15.

- ████████████ executed an annual subscription with Orchestrade on January 11, 2019. SUMF ¶ 17. Mr. Varn managed the negotiations and contract drafting to finalize the deal. SUMF ¶ 19.

In addition, Mr. Varn helped cultivate and pursue over a dozen other leads, and assisted with various renewal negotiations.  For example, he helped source and commence negotiations

3

with ███████ with whom Orchestrade closed a deal worth $████ just one month after Mr. Varn's departure. SUMF ¶ 20.

Beginning in late November 2018, as Mr. Varn's annual bonuses were soon to accrue, a dispute arose between the parties about correct amount of compensation due to Mr. Varn under sections 3.2 (Commission) and 3.3 (2018 Guarantee) of the Agreement. SUMF ¶ 21. On December 30, 2018, Orchestrade notified Mr. Varn of its intention to terminate its Agreement with him (via Gray Matter), effective January 30, 2019.  SUMF ¶ 22. Orchestrade stated that it was terminating the Agreement in order to hire Mr. Varn as an employee.  SUMF ¶ 23.

However, in ensuing negotiations, the parties failed to reach mutually acceptable terms for such an employment agreement, and Mr. Varn departed.  SUMF ¶ 24.  Mr. Varn submitted a final invoice (from Gray Matter) for what he believed he was entitled to under the Agreement, but Orchestrade disputed the invoice.  SUMF ¶ 25.  This lawsuit followed.

## STANDARD OF REVIEW

Summary judgment is warranted "only upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Husser v. New York City Dep't of Educ*., 137 F. Supp. 3d 253, 262 (E.D.N.Y. 2015) (citing *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008)); Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. at 262 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).  A genuine issue is presented if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 262 (citing *Holtz*, 258 F.3d at 69). In determining whether to grant summary judgment, "a court is confined to issue-finding, not issue-resolution." *Id*. at 262 (citing *Jillian Mech. Corp. v. United*

4

*Serv. Workers Union Local 355*, 882 F.Supp.2d 358, 364 (E.D.N.Y. 2012)). The court does not

"weigh the evidence and resolve ... factual issues," but rather "determine[s] as a threshold matter

whether there are genuine unresolved issues of material fact to be tried." *Id.* at 262 (citing *Owens*

*v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991)).

The moving party must demonstrate "the absence of a genuine issue of material fact." *Id.*

at 262 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets that

burden, "the opposing party must come forward with specific evidence demonstrating the

existence of a genuine dispute of material fact." *Id.* at 262 (citing *FDIC v. Great Am. Ins. Co.*, 607

F.3d 288, 292 (2d Cir. 2010)). "To defeat a summary judgment motion, the nonmoving party ...

may not rely on conclusory allegations or unsubstantiated speculation." *Id.* at 262. Moreover,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.* at 263. "Factual disputes that are irrelevant

or unnecessary will not be counted." *Id.* at 263 (citing *Monclova v. City of New York*, 2014 WL

4828813, at *8 (E.D.N.Y. 2014)). Finally, "[i]n assessing the evidence, 'all reasonable inferences

are drawn in favor of the non-movant[.]'" *Id.* at 263 (citing *Wellesley v. Debevoise & Plimpton*

*LLP*, 346 Fed. Appx. 662, 662 (2d Cir. 2009)).

## ARGUMENT

The undisputed facts show that: (I) Orchestrade breached Section 3.2 of the Agreement by

only paying Plaintiffs $█████ when he was in fact entitled to $█████ (II) that this $█████

underpayment breach constituted a violation of FIFA; and (III) that the damages for this breach

are $█████ plus interest, costs and attorneys' fees to be determined at trial.

**I.      Plaintiffs have established their right to summary judgment on their claim for
        breach of Section 3.2 of the Agreement, for commission on "total US sales."**

5

The parties' contractual dispute hinges on two portions of the Agreement: (1) section 3.2, governing an annual commission due to Mr. Varn on "total US sales", and (2) section 3.3, governing a "2018 guarantee" to which Mr. Varn was to be entitled if he maintained a certain "pipeline" of sales prospects.

Plaintiffs concede that portions of the dispute are not amenable to summary disposition: specifically, the parties' contractual dispute concerning the 2018 Guarantee, as well as Plaintiffs' claims for retaliation under the New York City's Freelance Isn't Free Act (New York City Administrative Code (NYCAC) § 20-927 *et seq.*) ("FIFA").  Plaintiffs contend that these issues must be resolved at trial.

However, Plaintiffs submit that the Court can narrow the issues at trial and rule in Plaintiffs' favor on their claims for breach of contract (and related FIFA penalties) relating to the underpayment alleged under Section 3.2, the annual commission.  That section reads as follows:

> For each calendar year, the following commission schedule will apply. For the first one million USD in total US sales, Orchestrade will pay Gray Matter Inc 3% of that revenue. For total US sales between one million and three million USD, Orchestrade will pay Gray Matter Inc 5% of that revenue. For total US sales above three million USD, Orchestrade will pay Gray Matter 7% of that revenue. Commission will be payable to Gray Matter Inc upon Orchestrade receiving payment from the client.

Ex. A, Sec. 3.2.

Discovery having concluded, no factual dispute remains as to the amount of "total US sales."  The undisputed evidence, including Orchestrade's interrogatory responses regarding its sales records, shows that Mr. Varn was underpaid under Section 3.2 of the Agreement.

Specifically, Mr. Varn closed three deals while at Orchestrade: two in 2018, and one in 2019.  Under the Agreement, payment was due upon Orchestrade's receipt of the corresponding

funds. See SUMF ¶ 3 (Ex. A, Agreement, "commission will be payable to Gray Matter Inc upon Orchestrade receiving payment from the client");

1. On July 10, 2018, Orchestrade entered into a contract with ███████████ under which Orchestrade was paid $██████[2] in 2019, making them due and payable (SUMF ¶¶ 7-10);

2. On October 10, 2018, Orchestrade entered into a contract with ███████████ under which it was paid $██████ in 2018 and 2019 (SUMF ¶¶ 13-16) ; and,

3. On January 11, 2019, Orchestrade entered into a contract with ███████████ Management, under which it was paid $██████ in 2019 (SUMF ¶¶ 17-20).

Thus, the facts are clear that Orchestrade closed: (a) at least[3] ████████ in "total US sales" in 2018, which would call for a bonus of $██████ and, (b) $██████ in 2019, which would call for a bonus of $█████ *See* SUMF ¶ 3 (Ex. A, Agreement, Sec. 3.2 ("For each calendar year, the following commission schedule will apply.  For the first one million in total US sales, Orchestrade will pay Gray Matter Inc 3% of that revenue.  For total US sales between one million and three million USD, Orchestrade will pay Gray Matter Inc 5% of that Revenue.").

Thus, Mr. Varn was due $██████under Section 3.3 of the Agreement, but was paid only $█████  This constitutes a clear breach of the Agreement by Orchestrade for underpayment of $█████

---

[2] Orchestrade had also received a separate $█████ from ███████████ in early 2018 to do a 'proof of concept', but that was prior to the closing of the contract that Mr. Varn assisted with, and Mr. Varn is not claiming a commission for such funds.  Ex. C, Varn Dep. 57:11-24.

[3] One other client, █████ also paid revenue in 2018 and 2019 that is part of Orchestrade's "total US sales", but Mr. Varn is not claiming remuneration or credit for this deal.



Orchestrade does not dispute that Mr. Varn is entitled to his commission for the ████████ and ████████████ deals; it only disputes the applicability of the ████████████ deal to Mr. Varn's compensation under Section 3.3.  But, as detailed below, Orchestrade's position with regards to ████████████ can be rejected as a matter of law.

**A.    ████████████ should be included in Mr. Varn's commission under the plain language of the Agreement, which is fully integrated and includes a written-modification-only clause.**

As noted above, Section 3.2 of the Agreement entitles Plaintiffs to a commission based on "total US sales" for any particular calendar year.  It is undisputed that Orchestrade closed a deal with ████████████, an American financial services firm headquartered in New York City, on July 10, 2018, leading to $████ in revenue collected.  SUMF ¶¶ 7-10.  Plaintiffs are therefore entitled to their commission on this account.  The parties dispute the status of the ████████████ account, but the dispute is not material.  Orchestrade has failed to adduce any evidence to support its position, and the Court should rule on this issue based on the parole evidence rule and the Agreement's written-modification-only clause.

Orchestrade argues that Mr. Varn is not entitled to commission on the ████████████ account because it was "a house account" which was already too far along when Mr. Varn joined Orchestrade. *See* Ex. B (Orch. Dep. 73:18-27, 74: 1-8); Ex. H (letter from Orchestrade's prior counsel).  Relying on what it calls "the spirit of the commission", Orchestrade's corporate representative testified that the parties have allegedly reached an understanding that Mr. Varn will not be paid commission on the ████████████ account:

> Q. Okay But, you never had a specific discussion with him until ████████ closed to tell him this won't be covered by your commission?
> A. We did not, but I -- it was -- it was understood when he came in that this was a house account. The contracts had been drawn already. The fee had been negotiated. The proof of concept was already in

8

> effect and being paid for. Right? If you look at the -- if you look at the spirit of the commission, the spirit of the commission as we negotiated it in the Services Agreement is, Liam finds the business, Liam takes the business through the sales cycle. Right? Drafts the proposal, gets them to agree on a rate and closes the business.

Orch. Dep. 73:18-27, 74: 1-8.

However, the Agreement contains no provision memorializing this alleged understanding. Moreover, as will be discussed below, Mr. Varn put a substantial amount of work into the deal, and was not even informed of Orchestrade's position on this issue until after Mr. Varn negotiated for and helped Orchestrade close the deal on this account.  SUMF ¶¶ 10-12.

The Court can and should decide this issue at this juncture, for three reasons: (1) because even viewing the evidence in the light most favorable to Orchestrade, the facts are clear that the account falls within the ambit of Section 3.2, given that Mr. Varn did a substantial amount of work on the deal and records reflect that he was the "account owner", and (2) because the parole evidence rule and the Agreement's written-modification-only provision preclude Orchestrade's position that there was some understanding that the deal did not apply to Mr. Varn's commission, and (3) because Orchestrade should be estopped from arguing that it could deny Mr. Varn his commission on the deal after it had closed.

> **1.      Even viewing the evidence in the light most favorable to Orchestrade, the facts are clear that the ███████████ account falls within the ambit of Section 3.2.**

No reasonable juror could conclude that Plaintiffs were not entitled to a commission for the ███████████ deal, for numerous reasons.

9

First, and most importantly, ████████ is a US-based company and therefore the revenue was part of "total US sales", and there are no provisions in the Agreement or written modifications to the Agreement to suggest otherwise.  SUMF ¶ 3 (Ex. A, Agreement); ¶ 10.

Second, Orchestrade's records shows that Mr. Varn was the "opportunity owner" for the ████████ account in Orchestrade's customer relationship management (CRM) software, Salesforce.  SUMF ¶ 11 (Ex. B, Orch. Dep. 74:16-18).  This system is specifically referenced in Section 3.2 of the Agreement, as an authoritative point of reference for what accounts Mr. Varn would be entitled to a receive commission on. Ex. A ("Any sales opportunities in the sales pipeline (salesforce CRM) prior to the date of hire of a US sales representative, which are in turn transferred to that representative, shall be realized as Commission payable to Gray Matter Inc at a discounted rate of fifty percent.").

Third, documentary evidence and Orchestrade's own testimony shows that Mr. Varn did a significant amount of work on the deal. Email records reveal that Mr. Varn was central to the deal as early as two months before it closed on July 10, 2018.  In any email dated April 24, 2018, Mr. Varn told Hakim Erhili, Orchestrade's CEO, that he had engaged in a "brain dump" with the Orchestrade employee who worked on the deal before him, by the name of Farid, and that "He's agreed to include me in every conversation with ████ moving forward, resulting in a complete transition of the account."  Ex. E (late April email exchange between Mr. Varn and Mr. Erhili). But Mr. Varn went on to express the view that it was "a risk to the deal if we immediately sever Farid's contact with ████ r . . . if you'll allow it, my preference would be that we provide time for him to organically transition those relationships…".  Mr. Erhili responded, on the same day:

> Liam,
>
> I already took the risk and I'm fine with it.

10

Please get this deal closed as soon as you can.

This deal is getting a lot more complex than it should have been. We never had to go through PoC for the previous 25 deals we did in the past.

You can pursue anything you want and the way you want it, but I need the ▮▮▮ locked as soon as possible.

And again, I don't want to hear the name of Farid in anything related to any deal.

Thanks.

Ex. E, at 1.  In its 30(b)(6) deposition, Orchestrade did not dispute that Mr. Varn worked on this account. SUMF ¶ 10 (Ex. B, Orch. Dep. Orch. Dep. 72:04-08) ("[Mr. Varn] went on calls with the clients. And he – he negotiated… [Orchestrade's] positions on the contracts, and [Mr. Varn] took it to a place where [Orchestrade] signed it and closed the -- closed the contract.")

There is, admittedly, a minor dispute on this issue, but it does not change the calculus.  Mr. Mr. Varn testified that his manager stated that he would be entitled to commission on this account. Ex. C, Varn Dep. at 49:16 - 50:07 ("I asked Gordon [Mr. Chan], 'Am I going to get paid on this?' And Gordon Chan's response was verbatim, 'I don't see why not.'").  Mr. Chan had no recollection of this conversation. Ex. B, Orch. Dep. 72:24 - 73:03 ("Q: And had you talked to him about the commission before that time, before it closed about whether he would get his commission on it if it did close?  A. I don't recall.").

This disagreement about a brief oral exchange does not change the undisputed fact that neither the Agreement nor any modification to the Agreement exempted ▮▮▮▮▮▮▮ from the category of "total US sales" under the plain language of the Agreement, and that Mr. Varn worked on the Agreement for over two months, was the "account owner" and was told to "get this

11

deal closed". Ex. E, at 1. Based on all of the above, no reasonable juror could conclude that it was unreasonable for Mr. Varn to expect to receive his commission for the ███████████ deal.

        **2.**        **The Agreement's No-Modification-Clause and the Parole Evidence Rule preclude Orchestrade's interpretation that ███████erald was impliedly not included in "total US sales".**

Even if the Court should decline to find that the ███████████ deal is clearly part of Orchestrade's "total US sales" based on the evidence alone, it should still find that the ███████ ███████ account was included in Section 3.2 as a matter of law, because the Agreement is fully integrated and includes a no-oral-modification provision.

"A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640 (2009) (quoting *Greenfield v. Philles Records,* 98 N.Y.2d 562, 569 (2002)); *see also Stroll v. Epstein*, 818 F. Supp. 640, 645 (S.D.N.Y. 1993) ("[A] contract which appears complete on its face is an integrated agreement as a matter of law."), *aff'd*, 9 F.3d 1537 (2d Cir. 1993); *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 2009 U.S. Dist. LEXIS 30386, 53-54 (S.D.N.Y. 2009) ("If the written document appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, [then] it constitutes the contract between them, and is presumed to contain the whole of that contract.").

It is undisputed that the Agreement at issue defines the parties' respective obligations, encompassing the object and measure of their engagement. Thus, it is complete and fully integrates their understandings. And Section 5.3 of the Agreement explicitly precludes oral modifications of the Agreement. Specifically, it states the following: "Any modification or amendment of any provision of this Agreement must be in writing and bear the signature of the duly authorized

representatives of both parties." Ex. A (Agreement), Sec. 5.3.  Under New York law, a written-modification only clause like the one in the present Agreement "is enforceable under N.Y. Gen. Oblig. Law § 15-301(1) which "places this type of clause on the same footing as any other term in a contract."  *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 283 (S.D.N.Y. 2019) (internal citations omitted).

Despite this, and although the Agreement lacks any reference to 'ineligible' accounts or revenues not falling within Section 3.2, Orchestrade takes the position that the parties have reached an understanding that ███████ account is excepted from Section 3.2. Ex. H (Yu Letter).

Yet there is nothing in the Agreement to suggest that ███████ was not to be included in the calculation of "total US sales" and Orchestrade admits that there is no evidence that the Agreement was ever modified in writing. Ex. B, Orch. Dep. 46:21023 ("Did Orchestrade ever do any modifications in writing to this agreement?  A. Not that I'm aware of.").

Orchestrade is a commercially sophisticated party.  Had Orchestrade wished to stipulate that Mr. Varn would be directed to work on US-based sales which were not to be included in the definition of "total US sales", then Orchestrade could easily have bargained to include such carve-outs into the fully-integrated Agreement.  But it did not.  *See, e.g., Arizona Family Florists LLC v. 1-800-Flowers.com, Inc*., 2020 US Dist LEXIS 31389, at *38-39 (E.D.N.Y Feb. 21, 2020) (granting summary judgment where "[t]he clear merger clause language of the that contract specifically excludes the interpretation sought").

Orchestrade cannot rely on parole evidence to argue that there was some sort of implicit understanding that Plaintiffs were not to be credited their commission under Section 3.2 for certain "total US sales" that Plaintiffs worked on simply because those deals were further along in Orchestrade's sales process than other deals.  *Comprehensive Habilitation Servs. v. Commerce*

13

*Funding Corp.*, 2009 U.S. Dist. LEXIS 30386, 52 (S.D.N.Y. 2009) ("[P]arol evidence about a contract party's unexpressed intentions is inadmissible to vary the plain meaning of the contract's language; in determining the intention of the parties it is their objective manifestations of intent (found in the words of the agreement), not their unexpressed subjective intentions, that control.") (citations omitted).

In sum, Orchestrade's alleged understanding constitutes an oral modification of the Agreement which contradicts the plain terms of the Agreement, it is barred by the parole evidence rule. For the foregoing reason, this Court should conclude that Mr. Varn is entitled to commission on the █████████████ account as a matter of law.

> **3.    Orchestrade should be estopped from arguing that ███████████████ was not included under Section 3.2, because it only took this position after Mr. Varn worked on the deal and helped it close.**

Even if the Court declines to find in Plaintiffs' favor for any of the reasons above, it should still find that Orchestrade is estopped from taking the position that █████████████ did not fall within the ambit of Section 3.2, since Orchestrade admits that it did not tell Mr. Varn that it considered the account exempt from his commission until after he had worked on the closing for over two months.  Ex. B, Orch. Dep. 73:18-21 ("Q. [] you never had a specific discussion with him until ████████ closed to tell him this won't be covered by your commission? A. We did not.").

Clearly, Mr. Varn relied on the reasonable understanding that █████████████ would be treated like any other account and included in the measure of Orchestrade's "total US sales".  It would be inequitable for Orchestrade to be permitted to reveal its counterintuitive interpretation of the Agreement only after Mr. Varn had worked hard to close the deal for Orchestrade, which helped earn the company $██████

**II.     Plaintiffs Have Established the Applicability of FIFA, Such That They Are Entitled to $███ in statutory damages and attorneys' fees in an amount to be determined at trial.**

In light of the underpayment above, Plaintiffs have established a claim under New York City's Freelance Isn't Free Act (New York City Administrative Code (NYCAC) § 20-927 et seq.) ("FIFA").

**A.     Mr. Varn is a freelance worker as defined by FIFA.**

FIFA provides a cause of action for "Freelance Workers," and defines that term as follows:

> The term "freelance worker" means any natural person or any organization composed of no more than one natural person, whether or not incorporated or employing a trade name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation.

NYCAC § 20-927.

Gray Matter is an organization "composed of no more than one natural person"—Mr. Varn, who is its sole owner and employee. SUMF ¶ 2. The Agreement plainly demonstrates that Gray Matter was "hired or retained as an independent contractor" by Orchestrade to "provide services in exchange for compensation." *See e.g., Turner v. Sheppard Grain Enters., LLC*, 68 Misc 3d 385, 387 (Sup. Ct., NY County 2020) ("A review of the consulting agreement reveals that this was an agreement where plaintiff would provide his operations management expertise to defendant in exchange for compensation . . .  Clearly, plaintiff qualifies as an independent contractor based on this agreement and falls within FIFA's definition of a freelance worker.").

**B.     Defendant Orchestrade is a "hiring party" as defined by FIFA.**

FIFA provides a cause of action to freelance workers against "hiring parties", which are defined as:

15

> The term "hiring party" means any person who retains a freelance worker to provide any service, other than (i) the United States government, (ii) the state of New York, including any office, department, agency, authority or other body of the state including the legislature and the judiciary, (iii) the city, including any office, department, agency or other body of the city, (iv) any other local government, municipality or county or (v) any foreign government.

NYCAC § 20-927.

Orchestrade clearly retained Gray Matter to "provide any service". The Agreement is entitled "Services Agreement" and enumerates a list of services which Gray Matter was to provide. Ex. A (Agreement), at 1.

### C. FIFA was effective at the time the Agreement was entered into and is geographically applicable.

The Agreement was entered into on March 12, 2018: well after FIFA's enactment. *Clement v. Fuchs*, 2020 NY Slip Op 31520[U], *6 (Sup. Ct., NY County 2020) (FIFA applies to contracts that are entered into on or after the effective date of May 15, 2017) (citing Admin Code of City of NY § 20-927, Note 1; Local Law No. 140 [2016] of City of NY § 1, 2).

Mr. Varn is also a New York City resident, and the work was performed within New York City.  SUMF ¶ 1.  *Turner v. Sheppard Grain Enters., LLC*, 68 Misc 3d 385, 388 (Sup Ct, NY County 2020) (applying an "impact standard" to determine FIFA's geographic applicability and reasoning that FIFA applies to "New York City resident[s]").

### D. Underpayment pursuant to the Agreement constitutes a violation of FIFA.

By failing to pay Mr. Varn the full amount due to him under Section 3.2 of the Agreement, Defendant Orchestrade clearly violated FIFA, NYCAC § 20-929, which holds:

> a. Except as otherwise provided by law, the contracted compensation shall be paid to the freelance worker either:
>
> > 1. On or before the date such compensation is due under the terms of the contract; or

16

2. If the contract does not specify when the hiring party must pay the contracted compensation or the mechanism by which such date will be determined, no later than 30 days after the completion of the freelance worker's services under the contract.

b. Once a freelance worker has commenced performance of the services under the contract, the hiring party shall not require as a condition of timely payment that the freelance worker accept less compensation than the amount of the contracted compensation.

Under the terms of the Agreement, payments totaling $███ for his compensation under Section 3.2 of the Agreement in relation to commissions for the ████ and ███████ sales (both of which occurred in 2018) and the ██████ sale (which occurred just before Mr. Varn's departure in 2019) were due, at the latest, in 2019.  But Orchestrade only paid Plaintiffs $████  Ex. H.  Thus, Orchestrade failed to pay Plaintiffs "on or before the date such compensation is due under the terms of the contract", and in fact failed to pay Plaintiffs at all.

## III.    The Damages for Orchestrade's Underpayment Pursuant to Section 3.2 of the Agreement are Established by the undisputed facts.

As detailed in Section I above, Orchestrade underpaid Plaintiffs by $████ pursuant to Section 3.2 of the Agreement.  As detailed in Section II, this constituted a violation of FIFA.

FIFA holds that "a plaintiff who prevails on a claim alleging a violation of section 20-929 is entitled to an award for double damages." NYCAC 20-933 (b)(3).  Thus, Plaintiffs are entitled to summary judgment in the amount of $█████:  $█████ for compensatory damages and $██████ for double damages pursuant to FIFA.

FIFA also provides for "reasonable attorneys" fees. NYCAC § 20-929(b)(1).  Further, Plaintiffs are entitled to pre-judgment interest.   Accordingly, the Court should hold that Orchestrade is liable to Plaintiffs for an award for such additional damages in an amount to be determined at trial.

17

## **CONCLUSION**

Based upon the foregoing reasons and authorities, Plaintiffs submit that summary judgment should be entered in their favor against Defendant Orchestrade for breach of contract damages in the amount of $██████ for statutory "double" damages in the amount of $█████, and for liability for Plaintiffs' reasonable attorney's fees.  Plaintiffs submit that its other claims should be resolved at trial.

New York, New York
Dated: April 21, 2021

John J. Thompson, Esq.
THOMPSON & SKRABANEK, PLLC
42 W. 38th Street, Suite 1002
New York, NY 10018
jt@ts-firm.com
*Attorneys for Plaintiffs Liam Varn
and Gray Matter Inc.*

18

CERTIFICATE OF SERVICE

I hereby certify that April 21, 2021, I sent the foregoing document and the accompanying Declaration of John J. Thompson, the exhibits annexed thereto, and the Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts, to Defendants' counsel in the above-referenced action, via email to the individuals below, in accordance with Individual Rule 3(D) and the Briefing Schedule agreed to by the parties and approved by this Court.

Jenny H. Kim, Berg & Androphy
JKim@bafirm.com

Emily Burgess, Berg & Androphy
eburgess@bafirm.com

DATED this 21st day of April, 2021.

John J. Thompson, Esq.
THOMPSON & SKRABANEK, PLLC
42 W. 38th Street, Suite 1002
New York, NY 10018
jt@ts-firm.com
*Attorneys for Plaintiffs Liam Varn and Gray Matter Inc.*

1